## J. A. BARNETT v. MATAGORDA RICE AND IRRIGATION COMPANY.

### No. 1369.   Decided December 15, 1904.

**1.—Surface Water.**

   The owner of land has no right to have the surface water flowing over his property pass off in accordance with its natural flow over that of an adjoining proprietor; and the latter may repel it from his premises by any due exercise of dominion over his own soil.   (Pp. 358, 359.)

**2.—Same—Embankment of Irrigation Ditch.**

   The owners of land adjoining that of plaintiff erected on their premises, along his south and east lines, an irrigation ditch with an embankment which prevented the escape of surface water from plaintiff's land.   Held that neither such adjoining proprietors nor the irrigation company constructing the ditch for them and furnishing water for it were liable to plaintiff for the damage caused by their embankment holding the water on his land.   (Pp. 357-360.)

**3.—Same—Cases Distinguished.**

   The decision in Gembler v. Echterhoff, 57 S. W. Rep., 313, distinguished from Gross v. City of Lampasas, 74. Texas, 197, as presenting a case of collection and storage of water in a permanent pond, by one proprietor and for his own use, upon the premises of another, and not a due exercise of dominion over his own soil.   (P. 360.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Matagorda County.

*W. S. Holman,* for appellant.—It was incumbent on the defendants

in this case to so use their own property as not to injure property of plaintiff. Gembler v. Echterhoff, 57 S. W. Rep., 313; Pfeiffer v. Brown, 165 Pa. St., 267; Blaisdell v. Stephens, 14 Nev., 17; Paddock v. Somes, 102 Mo., 226; Jutte v. Hughes, 67 N. Y., 267; Shipley v. Fifty Associates, 106 Mass., 198; Gould on Waters, sec. 267; Adams v. Walker, 34 Conn., 466; Long on Irrigation, secs. 68 and 69, pp. 125, 126, 127, and cases cited thereunder; Greely Irrigation Co. v. House, 14 Colo., 549; Chidester v. Consolidated Ditch Co., 59 Cal., 197; Bates v. Van Pelt, 1 Texas Civ. App., 185.

*E. F. Higgins,* for appellee.—The testimony discloses that the water whose natural flow was obstructed was surface water flowing upon the surface of the earth towards the south, following no defined channel or water course, and under the law the defendants Moore and this appellee were not liable for obstructing its flow. Rev. Stats., art. 3258; Gross v. City of Lampasas, 74 Texas, 195; Booker v. McBride, 16 Texas Civ. App., 350; Gembler v. Echterhoff, 57 S. W. Rep., 313; Railway Co. v. Elam, 1 White & W. C. C., 447; Gannon v. Hargadon, 10 Allen, 106, 87 Am. Dec., 625; Gibbs v. Williams, 25 Kan., 214; Morrison v. Bucksport Ry. Co., 67 Me., 355; Rawstron v. Taylor, 11 Exch., 369; Flagg v. City of Worcester, 13 Gray, 601; Bates v. Smith, 100 Mass., 181; see also cases cited in notes on pp. 920 and 921, 24 Am. and Eng. Enc. of Law, old ed. For definition of surface water, see 24 Am. and Eng. Enc. of Law, old ed., pp. 896, 897, and cases cited. Kansas City & E. Ry. Co. v. Riley (Kan.), 20 Am. and Eng. Ry. Cases, 116; Rathke v. Gardner, 134 Mass., 14; Rowe v. Railway Co. (Minn.), 39 Am. and Eng. Ry. Cases, 255; Jordan v. Railway Co. (Minn.), 41 Am. and Eng. Ry. Cases, 1; Abbott v. Railway Co. (Mo.), 20 Am. and Eng. Ry. Cases, 103, and note; Bowlsby v. Speer, 31 N. J. Law (2 Vroom), 351; Waters v. Bay View (Wis.), 21 N. W. Rep., 811; Hoyt v. City of Hudson, 27 Wis., 656; Euelrich v. Richter, 37 Wis., 226; Johnson v. Railway Co., 80 Wis., 641; Lessard v. Stram, 62 Wis., 112; Grant v. Allen, 41 Conn., 156; Taylor v. Fickas, 64 Ind., 167; Chadeayne v. Robinson, 55 Conn., 345; Benthall v. Seifert, 77 Ind., 302; Shelbyville, etc., v. Green, 99 Ind., 205; Atchison T. & S. F. Ry. Co. v. Hammer, 22 Kan., 763; Bangor v. Linsil, 51 Me., 521; Greeley v. Railway Co., 53 Me., 200; Murphy v. Kelley, 68 Me., 521; Franklin v. Fisk, 13 Allen (Mass.), 211; Macomber v. Godfrey, 108 Mass., 221; Keith v. Brockton, 136 Mass., 119; O'Brien v. St. Paul, 25 Minn., 336; Stewart v. Clinton, 79 Mo., 603; Hoester v. Hemsath, 16 Mo. App., 486; Jones v. Railway Co., 18 Mo. App., 251; Martin v. Benoist, 20 Mo. App., 262; Field v. Railway Co., 21 Mo. App., 600; Schneider v. Railway Co., 29 Mo. App., 68; Bird v. Railway Co., 30 Mo. App., 365; St. Louis I. M. & S. Ry. Co. v. Schneider, 30 Mo. App., 620; Burke v. Railway Co., 29 Mo. App., 370; Collier v. Railway Co., 48 Mo. App., 398; Sweet v. Cutts, 50 N. H., 439; Barkley v. Wilcox, 86 N. Y., 140; Wagner v. Railway Co., 2 Hun, 633; Harwood v. Benton, 32 Vt., 724; Chatfield

v. Wilson, 28 Vt., 49; Dissenting opinion of Hough, J., in 71 Mo., 237; Buffum v. Harris, 5 R. I., 253; Wakefield v. Newell, 12 R. I., 75; Parks v. Newburyport, 10 Gray, 28; Ashley v. Wolcott, 11 Cush., 192; Curtis v. Railway Co., 14 Allen, 55; Hawkesworth v. Thompson, 98 Mass., 77; Emery v. Lowell, 104 Mass., 16; Dickinson v. Worcester, 7 Allen, 19; Turner v. Dartmouth, 13 Allen, 291; Grant v. Allen, 41 Conn., 156; Wadsworth v. Tillotson, 15 Conn., 366; Gillett v. Johnson, 30 Conn., 180; Adams v. Walker, 34 Conn., 466; Goodale v. Tuttle, 29 N. Y., 459; Curtiss v. Ayrault, 47 N. Y., 73; Pixley v. Clark, 35 N. Y., 532; Cott v. Railway Co., 36 N. Y., 217; Brown v. Bowen, 30 N. Y., 538; Waffle v. Railway Co., 58 Barb. (N. Y.), 413; Ellis v. Duncan, 21 Barb., 230; Waffle v. Porter, 61 Barb., 130; Conhocton, etc., Ry. Co. v. Railway Co., 51 N. Y., 573; Delhi v. Youmans, 50 Barb., 316; Bellinger v. Railway Co., 23 N. Y., 42; Gould v. Booth, 66 N. Y., 62; Sleight v. Kingston, 18 N. Y. Sup. Ct., 594.

WILLIAMS, ASSOCIATE JUSTICE.—This case is before us upon the following certificate from the Court of Civil Appeals for the First District:

"The questions hereinafter stated arise upon the following facts disclosed by the record in this cause now pending before us on appeal.

"J. A. Barnett was the owner of a 35-acre tract of land which he occupied with his family as a home.

"D. P. Moore owned a large tract south of and adjoining Barnett's land. Ira G. Bond controlled the land adjoining Barnett's on the east.

"The Matagorda Rice and Irrigation Company is a corporation chartered under the laws of Texas for the purpose of taking water from the Colorado River for irrigation, and to this end has established a pumping plant, canals and laterals for its proper distribution.

"With Moore's consent one of the company's laterals was constructed on Moore's land about twenty feet south of Barnett's south line. In the construction of this lateral it was necessary to throw up an earthen dyke on the side next to Barnett's property, the earth used for the purpose being taken from Moore's land on the north side of the lateral, thus leaving a ditch called a 'borrow-pit.' This lateral was intended and used in the irrigation of Moore's land and the dyke was necessary to keep the irrigation water on his land. Later Bond concluded to irrigate his land, and with the consent of Moore and the co-operation of the company, connected his irrigation ditch with the lateral on Moore's land in order that the company might furnish him the necessary water by means of that lateral. In constructing his own ditch Bond threw up an earthen dyke near Barnett's east line and in connecting his ditch and dyke with the Moore lateral he filled the above mentioned borrow-pit, thus preventing the surface water which fell on Barnett's land from running off over Moore's into an adjacent running stream wherein

it had drained by reason of the natural lay of the land until the construction of the Moore and Bond dykes.

"Barnett's property was situated in the right angle formed by the junction of these dykes, and his land being higher near his north line and sloping toward the junction of the dykes, the surface water in time of rain filled the borrow-pits, flowed back and stood on plaintiff's land, injuring his crops, causing him inconvenience, and affecting his wife's health. For his damages in these respects and for damages caused by an alleged overflow of water from the Moore irrigation ditch he seeks a recovery in this suit.

"In view of the doctrines announced in Gross v. City of Lampasas, 74 Texas, 197, and Gembler v. Echterhoff, 57 S. W. Rep., 313, we deem it wise to propound for your decision the following questions:

"First. Are Moore and Bond, or either of them, liable for injury resulting to Barnett from the surface water the natural flow of which was inevitably obstructed and caused to stand on Barnett's land by the dykes or embankments necessary to hold the irrigation water on the Moore and Bond lands?

"Second. Was the irrigation company liable for damages due to the collection of surface water necessarily resulting from the proper construction of their laterals on the Moore land?"

Taking up the second question first, it may be safely assumed that the irrigation company is not liable if Moore and Bond are not. No facts are stated to make it liable under seciton 17 of article 1 of the Constitution for damaging plaintiff's property for public use. What it did was done upon Moore's land by his authority, and it is not liable for the damage claimed unless Moore would be had he done the same thing.

In the case of Gross v. Lampasas, 74 Texas, 195, the plaintiff erected a wall along the line of his lot so as to intercept the surface water, which had previously flowed through a depression across a street of the city and found its outlet over the lot. The effect was to throw the water back upon the street and other private property and to form an almost permanent pond. It was held that the plaintiff had the right to do this, the court saying: "We think that under the facts of this case plaintiff enjoyed the 'right to build the wall upon his own land and prevent its overflow by the surface water. Lessard v. Stram, 51 Am. Rep., 715. Having this right, plaintiff stood with regard to the nuisance created by the surface water after it had been obstructed by the wall as did other people affected by it, and just as he would have stood if not previously connected with it in any way."

In the use and control of its streets, a municipal corporation, in the absence of qualifying statutory provisions, has the same rights with respect to the disposition of surface water as have owners of land generally; it and owners of lots adjacent to streets occupying towards each other the same relations as those of other adjoining land owners. Gould on Waters, sec. 269. The decision in the Gross case is therefore

a clear recognition of the rule of the common law as to the right of land owners to repel the flow of surface water over their lands from those adjoining, and that whatever damage is caused by the exercise of this right is to be regarded as damnum absque injuria. The doctrine of the common law upon the subject is thus stated in Bolwsby v. Speer, 31 N. J. L., 352, which is quoted with approval by Judge Brewer, then of the Supreme Court of Kansas, in Gibbs v. Williams, 37 Am. Rep., 243:

"It is not one of the legal rights appertaining to land, that the water falling upon it from the clouds shall be discharged over land contiguous to it; and this is the law, no matter what the conformation of the face of the country may be, and altogether without reference to the fact that in the natural condition of things the surface water would escape in any given direction; the consequence is therefore that there is no such thing known to the law as a right to any particular flow of surface water, jure naturae. The owner of land may at his pleasure withhold the water falling on his property from passing on to that of his neighbors, and in the same manner may prevent the water falling on the land of the latter from coming upon his own. In a word, neither the right to discharge nor to receive surface water can have any legal existence except from a grant, express or implied. The wisdom of this doctrine will be apparent to all minds on a little reflection. If the right to run in its natural channels was annexed to surface water as a legal incident, the difficulties would be infinite indeed. Unless the land should be left idle, it would be impossible to enforce the right in its rigor; for it is obvious every house that is built and every furrow that is made in a field is a disturbance of such right. If such a doctrine prevailed, every acclivity would be and remain a watershed, and most low ground become reservoirs. It is certain that any other doctrine but that which the law had adopted would be altogether impracticable. The legal principle, as stated above, is fully established in the following cases: Greatrex v. Hayward, 8 Exch., 291; Rawstron v. Taylor, 11 Exch., 369; Broadbent v. Ramsbotham, 11 Exch., 602; Dickinson v. Worchester, 7 Allen, 19; Parks v. Newburyport, 10 Gray, 28; Luther v. Winnisimmet Co., 9 Cush., 171; Ashley v. Wolcott, 11 Cush., 192; Shields v. Arndt, 3 Green Ch., 234." A great number of other decisions to the same effect might be cited.

In Gannon v. Hargadon, 10 Allen, 110. a brief statement of the rule is thus given by Chief Justice Bigelow: "The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil." We quote this passage because it gives a qualification of the right defined which must always be kept in mind, that the action of the landowner must not exceed a "due exercise of dominion over his own soil." The case involved a question which does not arise here, as to the right of one proprietor, for the protection of his own

soil, to turn upon his neighbor's land water which otherwise would not have flowed upon it, and upon that question we express no opinion.

The qualification referred to explains the distinction between the decisions in the two cases referred to in the certificate. The Gross case showed only the proper exercise of dominion by the owner over his own property, while the other case showed the collection and storage of water in a permanent pond by one owner in such way as to constitute an invasion of the possession of an adjoining proprietor and the use of his land in maintaining the pond of water as property of the person storing it. The distinction is clearly stated in the opinions of Justices Fly and Neill. 57 S. W. Rep., 314, 315.

The present case shows only that the owners of soil did upon it that which their ownership entitled them to do, putting it to a natural and legitimate use in improving it for agricultural purposes. This was no wrong to plaintiff unless he had the legal right to have the surface water naturally flowing upon his land to pass over that of the defendants, which, as we have seen, is not true under the principles of the common law. We therefore answer that the facts stated show no liability on the part of the defendants.