## WILBORN v. TERRY et al.

(Court of Civil Appeals of Texas. Galveston. Oct. 31, 1913. Rehearing Denied Dec. 4, 1913.)

1. WATERS AND WATER COURSES (§ 118*) — SURFACE WATERS.

Where a lower landowner erects a dam or other obstruction which prevents ordinary surface waters from flowing over his land, thus obstructing natural drainage, though not interfering with the water course, he is not liable for injuries caused to the lands of other proprietors upon which the surface waters are thrown back.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 128–130; Dec. Dig. § 118.*]

2. WATERS AND WATER COURSES (§ 38*) — WHAT CONSTITUTES "WATER COURSE" — MARSH.

A depression of the ground in a flat marshy country, filled with rank vegetation, from a quarter of a mile to a mile in width, with no defined banks and no channel, and through which water only oozes, is not a water course.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 30; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 8, pp. 7410–7413, 7833.]

3. WATERS AND WATER COURSES (§ 118*) — SURFACE WATERS.

A landowner who erected a dam, thus collecting surface waters in a lake upon his own property and retaining them so that they were thrown back on the land of higher proprietors, is liable for the injury.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 128–130; Dec. Dig. § 118.*]

4. WATERS AND WATER COURSES (§ 126*) — SURFACE WATERS—ACTIONS.

In an action for damages for damming a lake so that surface waters were collected and thrown back on plaintiff's land, evidence *held* insufficient to show that the dam cast water upon plaintiff's land, at most showing only that it prevented the surface water from flowing off as rapidly as before.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 139, 141, 142; Dec. Dig. § 126.*]

Appeal from District Court, Chambers County; L. B. Hightower, Judge.

Action by George F. Wilborn against J. W. Terry and others. From a judgment for defendants, plaintiff appeals. Affirmed.

A. W. Marshall and R. J. McMurrey, both of Anahuac, and E. B. Pickett, Jr., of Liberty, for appellant. C. F. Stevens, of Liberty, and Ballinger Mills, of Galveston, for appellees.

REESE, J. The following statement of the nature and result of the suit is taken from appellant's brief, which is admitted by appellees to be correct:

The appellant, George F. Wilborn, filed this suit on August 16, 1912, against J. W. Terry, Daniel Ripley, and F. G. Pettibone. Before trial the suit as to Pettibone was dismissed. Recovery of damages in the sum of $3,534 is sought, and to support his action appellant alleged that he is the owner of sections 1, 3, and 7, T. & N. R. R. Co. survey, in Chambers county, which are located northeast and east of Lake Stephenson, and that about December, 1910, and January and February, 1911, defendants, having leased said lake, and a strip of land bordering and entirely surrounding same, from the owners thereof, constructed a dam at the head of Gordy Marsh, into which Lake Stephenson flows, said dam being 2,410 feet in length and 2 feet high; that the natural outlet and drainage of Lake Stephenson is into said Gordy Marsh, which flows into Lone Oak bayou, and that bayou empties into Trinity Bay; that such course is the natural flow and drainage of the water from plaintiff's said lands when not obstructed, and that other lands in the vicinity thereof drain into Lake Stephenson, but that the dam, as erected by defendants, did and does obstruct the natural flow of water from Lake Stephenson and banks the water up in said lake, thus obstructing the natural flow of the waters of said lake and that which falls upon the adjoining lands and naturally flows into said lake, thereby backing said waters upon plaintiff's lands and causing same to remain thereon, thus damaging and destroying the grass and for a time depriving him entirely of his pasture, to which purpose only is the land devoted, and that that is practically its only value. Plaintiff further alleged that defendants still maintain said dam, and that the natural flow of the waters of said Lake Stephenson and adjoining lands is thereby obstructed, and that the water will thereby be caused to continue to back up and cover

plaintiff's land, as above stated, if said obstruction is permitted to remain. In addition to the damages prayed for, an injunction is asked to require defendants to remove the dam and permit the waters from said Lake Stephenson, and those that accumulate therein from adjoining lands, to flow therefrom in their natural course, as above indicated, without obstruction.

Terry answered by general denial and pleaded specially that he and his associate had leased from the owner the body of water known as Lake Stephenson and a strip of land 200 feet in width around the lake, and that he had had the dam in question erected for the purpose of preventing the inflow of salt water from the bay into the lake in order to prevent the killing of vegetation in the lake and to preserve the water fresh for use as drinking water for his cattle. The purpose in preventing the destruction of the vegetation by salt water was to preserve and increase the value of the lake for hunting purposes. Wild ducks resorted to the lake to feed upon this vegetation. It is not necessary further to set out the allegations of defendants' pleadings. Ripley adopted Terry's answer.

The case was tried with a jury, and, after the conclusion of the evidence, the court instructed the jury to return a verdict for defendants, which was done, and judgment rendered accordingly, from which plaintiff appeals.

Lake Stephenson (sometimes spoken of as White's Lake) is a body of shallow water, never more than about two feet deep, collected in a natural depression of the ground in the flat plain lying along the bays connecting with the Gulf of Mexico. The lake is about one mile wide and about 1½ miles long. It is fed by the collection of rainwater naturally draining into it as surface water from the surrounding territory and is much resorted to by wild ducks during the winter, which feed on the vegetation of the lake. The entire surrounding territory is flat and marshy but affords pasturage for cattle. At the north end of the lake there is a wide depression of the ground, which extends northwardly to Lone Oak bayou, which leads into Trinity Bay. During seasons of heavy rainfall, filling up the lake with surface water above the level of this marsh, this water drains off from Lake Stephenson through this marsh into Lone Oak bayou and thus finds its way into Trinity Bay, and in the same way, at seasons of very high tides, the waters of Trinity Bay find their way, through this bayou and marsh, into the lake. The undisputed evidence with regard to this marsh is that it is simply a depression of the ground with no defined banks, varying in width from a quarter of a mile to a mile or more. The length of the dam, at the junction with the lake, 2,410 feet, indicates its width at that point. About 1½ miles below this dam there begins something like a defined way of exit, or water course, called Lone Oak bayou. The bed of this marsh is covered with a rank growth of grass and sea cane. There is no defined channel in the marsh for the passage of water, which just oozes through the vegetation in the marsh without perceptible current. Appellant is the owner of three sections of land lying north and east of Lake Stephenson. The nearest point of any one of these sections is from a half to three-quarters of a mile from the lake, and east of it. These sections are inclosed and used by appellant for pasturage for his cattle. This land is all low, flat, and marshy, and after anything like a heavy rainfall, before as well as since the erection of the dam, at least that part of the land claimed to be affected by the backwater from the lake on account of the erection of the dam is to some extent covered with water. This surface water falling on appellant's land finds an outlet, some of it into East Bay, and some of it into Lake Stephenson. The evidence leaves no doubt that the erection of the dam obstructs to some extent the outflow of water from the lake through Gordy Marsh, whenever there is a sufficient accumulation of water in the lake. The surrounding country is so flat that engineers, in making surveys, compute elevation in inches and fractions thereof.

[1, 2] Appellant's contentions are generally that by reason of the dam in question, after a heavy rainfall, the water accumulating in the lake backs up over and upon his land and remains there for such a length of time as to injure and destroy his grass. It is not contended that water would not accumulate and lie on his land in such circumstances, to some extent, without this dam, but that it would not be so deep and remain so long. Appellant contends: First, that Gordy Marsh is a water course and on this account its obstruction, to his damage, unlawful; and, second, that if this is not true the effect of the erection of the dam is to collect in the lake the surface water from the surrounding lands, filling up the lake and casting the water there collected back upon his lands, and that he was damaged thereby. If there was any evidence to support either of these last two contentions, the case should have been submitted to the jury. These questions may be more satisfactorily disposed of without confining ourselves to a discussion seriatim of the several assignments of error as they are presented in the brief of appellant. It is sufficient to say that the questions discussed are sufficiently presented by the assignments. If the effect of the dam was only to obstruct or prevent the outflow from appellant's land of the surface water arising from rain falling thereon or falling on other lands surrounding, and which, in seeking an outlet, flowed over appellant's lands, there would be no liability on the part of appellees, unless Gordy's Marsh had the characteristics of a water course. Passing upon this last ques-

tion first, our conclusion is that the undisputed evidence shows that this marsh cannot be treated as a water course in dealing with the questions presented. The various definitions of what is meant in this connection by water course, and the enumeration of the characteristics thereof, are voluminous, and in conforming to these definitions it is sometimes difficult to determine whether in the particular case the obstruction of the flow of water is unlawful on this account; but in the present case, we think, there is no difficulty, and it would not be profitable to incumber this opinion with a discussion of the essential characteristics of a water course, as distinguished from the ordinary flow of surface water from higher to lower ground, as determined by the general topography of the country. A depression of the ground, in a flat marshy country, from a quarter of a mile to a mile in width, with no defined banks and no channel in the depression over the entire width of which surface water passes, without perceptible current, to lower ground, has not an element of a water course. Farnham on Waters, § 455a et seq.; 40 Cyc. 553 et seq.; Gross v. Lampasas, 74 Tex. 195, 11 S. W. 1086; Gramann v. Eicholtz, 36 Tex. Civ. App. 309, 81 S. W. 756.

[3, 4] While appellees, then, would not be liable if the effect of the erection of the dam would be merely to obstruct the drainage from appellant's land of its natural surface water (Barnett v. Irrigation Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636), he would be liable if such effect was to collect in Lake Stephenson the surface water falling upon the lands surrounding it and throw this water on appellant's lands. Gembler v. Echterhoff, 57 S. W. 313. There was plenty of testimony that appellant's lands were covered with water after a heavy rainfall, both before and after the erection of the dam. From the flat, marshy topography of the country, this was inevitable, and there was plenty of testimony that the dam obstructed the passage of water out of Lake Stephenson through Gordy Marsh. This also was its necessary consequence. But this is about as far as the testimony goes. Appellant testified that: "Before the building of that dam I never did see water backed up on my land and pasture between my pasture and Stephenson's Lake to the extent I saw it last winter; that is, I do not think it was ever a foot and a half. The pasture remained in that flooded condition from December, 1911, until March." The evidence showed that this was a season of unusually heavy rainfall. This was not disputed. The nature of the country must be considered and the distance of appellant's land from the lake. A map made by appellant's witness and introduced in evidence by him shows that a point of one of appellant's sections runs down to within 3,468 varas of the lake, but very little of his land lies within a mile, and most of it was much over a mile from the lake. We have examined the evidence very carefully; and we can find none that would have authorized a verdict for appellant. The most that can be gotten out of it for appellant is that, on account of the erection of the dam, the surface water did not flow off as readily as it did before. To the extent that this was done at all, the case falls within the doctrine of Barnett v. Irrigation Co., supra, and does not come within the doctrine of Gembler v. Echterhoff, supra.

We have carefully examined the several assignments and the propositions thereunder presented in the able brief of appellant and conclude that none of them presents any ground for reversal. The trial court did not err in instructing a verdict for appellees. Finding no error, the judgment is affirmed.

Affirmed.