INGRANDO v. GULF, C. & S. F. RY. CO. et al. (No. 366.)

(Court of Civil Appeals of Texas. Beaumont. May 17, 1918. Rehearing Denied June 5, 1918.)

1. WATERS AND WATER COURSES ⬤➝124 — MANDATORY INJUNCTION.

Where a railroad dug a ditch upon its own property, and the whole damage to land of an adjoining owner could be repaired completely, and a revetment constructed which would prevent further damage, such adjoining owner was not entitled to mandatory injunction to compel the railroad to restore to its former natural surface a washout in his land.

2. WATERS AND WATER COURSES ⬤➝119(4)— RAILROADS—RIGHT TO DRAIN.

A railroad had a right by digging a ditch on its own property to drain the right of way, thereby maintaining its tracks in the interest of the public, and, so far as an adjoining owner was concerned, had a legal right to continue the ditch on the property of some one else so as to connect with a gully, so that if a washout resulted from maintenance of the ditch, legally constructed, the only question to determine in the owner's suit against the railroad is one of negligent maintenance and damage.

Error from District Court, Harris County; Wm. Masterson, Judge.

Suit by I. Ingrando against the Gulf, Colorado & Santa Fé Railway Company and others. To review judgment for defendants, plaintiff brings error. Affirmed.

J. M. Gibson, of Houston, for plaintiff in error. Andrews, Streetman, Burns & Logue, of Houston, and Terry, Cavin & Mills, of Galveston, for defendants in error.

BROOKE, J. This suit was brought by plaintiff in error, I. Ingrando, by petition for a mandatory injunction against the de-

fendants in error to compel said defendants to fill and restore to its former natural surface condition a gully or washout that had been formed in plaintiff's premises, which were situated adjoining the defendant railroad and right of way, and to enjoin them from permitting said gully to remain unrepaired, so as to prevent future washing away of plaintiff in error's property. Plaintiff also asked for damages by loss of rents. It seems in this case the railway company dug a ditch on its own property, connecting with a natural draw which led to the bayou, and said ditch or the draw at no point touched the property of Ingrando, and as a matter of fact Ingrando did not own the property in question at the time the ditch was dug, but the property was untouched by either the ditch or the draw, and if affected by washing later, it is a question whether or not the ditch had anything to do with it. If, however, it did, it was only by reason of the fact that water washed the banks along which it flowed to such an extent as to cause damage. The ditch seems to have been dug by the railway company upon its own property perhaps at some time prior to 1911, and was upon property partly adjacent to that which later was purchased by Ingrando, and it permitted the surface water to flow through the ditch into the natural draw, which led to the bayou. The fact that the ditch extended somewhat beyond the property of the railway company, in order to connect it with the draw, does not alter the case, in so far as Ingrando is concerned, for the reason that there is no complaint that the ditch was at any place dug upon the land of said Ingrando. The defendants filed a joint answer, demurring generally to plaintiff's petition, with a general plea of not guilty and special defense of the statute of limitation of two years. After the evidence was heard, the plaintiff moved the court to submit the question on special issues, and defendants moved the court for a peremptory charge. The court overruled the motion of plaintiff to submit the special issues requested, and sustained the motion of the defendants, and gave a peremptory charge to the jury to find for the defendants. The verdict of the jury was rendered in accordance with said instruction. Plaintiff filed a motion for new trial, which was overruled. Plaintiff excepted and gave notice of appeal, and the cause is properly before this court by transfer from the First district at Galveston, by order of the Supreme Court.

It seems that the first assignment of error has been passed. The second assignment, however, is insisted upon, which calls in question the action of the lower court as being error in giving the following charge to the jury, instructing them to find a verdict for defendant, as follows:

"Gentlemen of the jury, in this case the plaintiff in open court having announced that he waived the claim of damage to his property, that is, for permanent injuries thereto, the measure of which would be the difference, if any, between the reasonable market value of said property before and after the alleged damage or injury; and the plaintiff, in the opinion of the court, not being entitled to the remedy of injunction as prayed for; and it appearing from the face of plaintiff's petition that his claim for use of rent on said land as claimed is below the jurisdiction of the court—you are therefore instructed to return a verdict for the defendant."

It seems that there was a trial amendment, which was as follows:

"Comes now the plaintiff, and by leave of the court first had and obtained files this his trial amendment to his first amended original petition herein, to wit: The plaintiff amends said petition by withdrawing therefrom in the concluding paragraph of same and at the end thereof all of the language which reads as follows: 'And, that if mistaken in this, he have damages for the full value of the depreciation in the market value of said premises in the sum of $900,' it being the intent of the plaintiff hereto to abandon his claim in said original petition for any depreciation in the market value of said premises by reason of said washout or ditch."

In opposition thereto, it is insisted that the allegations of plaintiff's petition must be taken as conclusive that there was no irreparable damage to the land and property of plaintiff, such as would entitle him to the relief by way of mandatory injunction as prayed for.

The testimony of F. W. Bobbitt is that the ditch cut by the railroad must have been cut in 1909 or 1910, that he was in charge of those matters from 1911 on, and that the ditch was in existence when he entered the employment of the Houston Belt & Terminal Railway Company in 1911. Bobbitt made a drawing, showing the construction of the ditch on the property of the railway company, and connecting with a draw, as he calls it, which was in existence at the time the ditch was dug, making a channel for the surface water to pass into Bray's bayou. The ditch itself can be traced backward to the railroad right of way, and the witness testified that at no point in the construction of the ditch would it touch the property of Ingrando, and further testified that he estimated the cost of the work referred to to be about $280.50 for the filling and $15 for the revetment. Two witnesses familiar with real estate values testified in the case, one of them testifying that he was in the real estate business, acquainted with real estate values in and about the Luke Moore league in Harris county, that he had been upon the Ingrando property not far from Bray's bayou, near the Santa Fé bridge, and that he was acquainted with the market value of property in the vicinity. He estimated the market value of the land at about $100 and the house at about the same amount. He testified that the washout which he observed on the property, which he visited a short while before the trial, would depreciate the value only about $25.

The other witness testified that he was

acquainted with the Ingrando property, and that he had visited it at the request of the defendant's attorneys, and he estimated the total valuation, including the house, at about $500, the land being worth about $500 per acre. He stated that if the washout had seriously cut into the property, it would proportionately depreciate the value, but he testified that upon his inspection the washout had not done any damage to it, and had caused no depreciation in the market value of it.

[1] Considering the damage was such as could be deemed irreparable in its nature, these witnesses state that the whole damage could be repaired completely, and that a revetment could be constructed which would prevent further damage. Therefore, if it be conceded that the railway company dug the ditch, plaintiff abandoned his claim for damages, and, in our opinion, the court appropriately instructed the jury peremptorily to return a verdict for appellees, and denied the injunction. In this connection, it may be appropriate to quote the language of the Supreme Court in the case of Barnett v. Matagorda Rice & Irrigation Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636, as follows:

"There is no such thing known to the law as a right to any particular flow of surface water, jure naturæ. * * * If the right to run in its natural channels was annexed to surface water as a legal incident, the difficulties would be infinite indeed. Unless the land should be left idle, it would be impossible to enforce the right in its rigor; for it is obvious every house that is built and every furrow that is made in a field is a disturbance of such right. If such a doctrine prevailed, every acclivity would be and remain a watershed, and most low ground become reservoirs. It is certain that any other doctrine but that which the law had adopted would be altogether impracticable."

While the plaintiff in error seeks to bring his case under article 4643, Vernon's Sayles' Civil Statutes, relating to injunctions, we are cited to the case of G. H. & S. A. Ry. Co. v. De Groff, 110 S. W. 1006, as supporting his contention. We find that the Supreme Court has overruled in this case, the opinion being reported in 102 Tex. 433, 118 S. W. 138, 139, 21 L. R. A. (N. S.) 749, in which opinion Judge Brown lays down the proposition that where the damage could be ascertained and recompensed fairly upon a monetary consideration, there was not such injury as would justify an injunction. In addition, it might be well to say that this case does not come within the statute relating to the duties of railway companies as to construction of sluices and drains underneath the roadbed, but is entirely different from the cases arising under that statute.

It is earnestly insisted, however, that it was error for the court below, in view of the evidence, to have withdrawn the case from the jury, and it is argued that the evidence discloses that plaintiff's lot had been very badly washed by reason of defendant's diverting the water from the ditch along its right of way out to the fence upon plaintiff's property, and that if the ditch be permitted to remain in its present condition, it will continue to wash, and that a railway company is bound to take in consideration, not only the existing situation of the land, but future changes therein that would be caused by a drain, and, further, the evidence shows that the owner of the land adjacent to the railroad right of way has been injured, and that this injury will probably continue in the future.

On the contrary, it is urged that the obstruction of the surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil. This suit is predicated upon the theory that the ditch in and of itself, even though constructed on the property of the railway company, constituted an illegal thing violating the rights of Ingrando and entitling him to the injunction. The cases of Wellborn v. Wellborn, 185 S. W. 1041, and Walenta v. Wolter, 186 S. W. 873, were decided by the Court of Civil Appeals at San Antonio, and involve the principles relied upon. A quotation made by the court in the latter case from the decision in Gramann-Eicholtz, 36 Tex. Civ. App. 309, 81 S. W. 756, is as follows:

"Under the common-law rule, which seems to prevail in this state, one may protect his own property from the effects of surface water percolating or flowing through or over it, and this without reference to the effect it may have on his neighbor's land. Booker v. McBride, 16 Tex. Civ. App. 348, 40 S. W. 1031."

It is also urged by appellees that, even though the plaintiff would otherwise have been entitled to an injunction, in view of the lapse of time subsequent to the digging of the ditch in 1909 or 1910, any right to enjoin the maintenance of said ditch was lost, and in no event could there be a right of action other than for damages.

Ingrando himself testified:

"I do not tell the jury there was no washing there in 1910, the latter part, say from September on, due to a ditch in that vicinity. I do not tell the jury there was no washing in 1911 due to a ditch in that vicinity. I mean there was no washing. 1912 was the start of the washing due to a ditch in that vicinity. I don't remember exactly the time, but it was beginning to start."

Tobe Wilson, who lives in a house adjacent to the one owned by Ingrando, testified:

"This ditch connected with that railroad right of way, and the property they brought it across was my fenced property, but I don't know—they got out of it some way—the railroad company fenced it in. I don't know exactly how near it come to my property, but about 100 feet, maybe 120 feet, something like. It didn't touch the lot that Mr. Ingrando owns next to me when it was first cut; it went kind of south of both of our properties. There was a ditch run right into the road, and all this going into there, it commenced washing. It didn't

touch Mr. Ingrando's property when it was first cut. I disremember how long after it was cut before it formed a wash, somewhere about 1913. This wash started in the ditch, and then that sliding clay kept caving back."

He further testified:

"There was washing back up there in the vicinity of Mr. Ingrando's property before 1913. The point that I told Mr. Gibson about is what I am speaking about. I won't undertake to say how long the ditch had been there."

He further testified that the railroad connected the ditch with an old gully, which ran back toward Ingrando's house. He says, with reference to this gully:

"The gully, I reckon, was there before the bayou got there. I reckon it has been there since the bayou is there. I reckon what made the bayou made the gully. That gully has been always there."

[2] It is further urged by defendants in error that, the plaintiff having abandoned his claim for damages, predicated upon the depreciation in the market value of his property, and having asserted only his right to an injunction, the court appropriately refused the injunction upon the hypothesis that to grant and enforce the injunction prayed for would relatively cause more injury to the railway company and the public interests served by it than to the plaintiff, should the injunction be denied, and they argue that there is no sufficient basis to determine just what effect upon the railway company's property in the vicinity a closing of the ditch in question would have. If there was such an amount of surface water passing off of the railroad right of way through this ditch as to cause serious damage to plaintiff's property, to the extent that same would be deemed irreparable, it would logically follow that such water handled through a ditch elsewhere would have a similar effect, and that the railroad had a right to drain its right of way, thereby maintaining the highway of commerce in the interest of the public. There is nothing in the record as to what method could be adopted by the railroad company other than such ditch as the one in question to properly drain the right of way in the vicinity. The railroad had a right to dig this ditch on its own property, and in so far as this plaintiff was concerned, it had a legal right to continue the ditch on the property of some one else so as to connect with the gully in question. If, therefore, the washing of plaintiff's land resulted from the maintenance of this ditch, which was legally constructed, the only question to determine would be one of negligent maintenance and damage.

We have carefully considered this record in the light of the photographs, the diagram prepared by the engineer showing the situation of the land and condition of the property, the pleadings of the respective parties, and the testimony admitted, and the action of the court, and we are of opinion that no substantial injustice has been done, such as would warrant this court in reversing and remanding the cause.

The judgment of the court, therefore, in our opinion should be affirmed. It is so ordered.