### NORTH TEXAS COMPRESS & WAREHOUSE CO. v. HOWARD et al.
#### (No. 6803.)

(Court of Civil Appeals of Texas. Austin.
Nov. 5, 1924.)

1. **Constitutional law ⬤188—Waters and water courses ⬤118—Statute prohibiting diversion of surface waters void, in so far as retroactive.**

Act May 29, 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), prohibiting diversion of natural flow of surface waters, or the impounding thereof in such manner as to damage property of another, is void as retroactive law in so far as it applies to structures erected prior to and in existence at time act went into effect.

2. **Waters and water courses ⬤125—Statutory liability limited to property damage caused by overflow of surface waters.**

Liability under Vernon's Ann. Civ. St. Supp. 1918, art. 5011t, for permitting surface waters to overflow, or for the impounding thereof, is limited to property damage caused by the overflow.

3. **Waters and water courses ⬤126(3)—Evidence as to overflow of surface waters held sufficient for jury.**

Evidence of defendant's acts causing overflow of surface waters on plaintiffs' property in violation of Vernon's Ann. Civ. St. Supp. 1918, art. 5011t, *held* sufficient to go to jury.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Action by Sarah E. Howard and husband against the North Texas Compress & Warehouse Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for new trial.

See, also, 238 S. W. 282.

W. O. Davis, of Gainesville, for appellant.
Garnett & Garnett, of Gainesville, for appellees.

McCLENDON, P. J. This was an action for damages for unlawfully impounding and diverting the natural flow of surface waters. The suit was brought by Sarah E. Howard and her husband, Robert Howard, against North Texas Compress & Warehouse Company, which we will refer to for convenience as the compress company. Plaintiffs recovered in the court below upon a special issue verdict, and the compress company has appealed.

The uncontradicted evidence in the case shows the following: The property of the compress company was about 900 feet long, bounded on the east by a railway company's right of way; on the north by Haight street; on the west by Compress or Moran street; and on the south by Belcher street. Mrs. Howard owned a lot upon which she had her residence, which had an 80-foot frontage on the west side of Compress street, her north line being about 200 feet south of Haight street and abutting on an alley extending west from Compress street. The property comprising Compress street and that east and west of it had formerly been sold off to various parties, and a strip 25 feet wide extending from Haight to Belcher streets had been left ostensibly for street purposes. Immediately to the east of this strip was another strip some 25 feet wide, the legal title to which was in the compress company. That company had covered its entire property, with the exception of a platform and this 25-foot strip, with a compress building and warehouses, the west wall of which extended in a straight line south from Haight to Belcher streets. In constructing these buildings the water from the roof was drained to the east and discharged through down spouts at their west wall. The first of these down spouts was about 62 feet south of Haight street, and the others averaged about 81 feet south of the next spout to the north. Beginning at Haight street, these down spouts were numbered 1, 2, 3, etc. The third of these down spouts was practically opposite the front gate of appellees' home. Prior to the construction of these buildings, the natural flow of the surface water was generally in a southeasterly direction; that is, the water falling upon and to the north and west of appellees' property would naturally flow to the southeast, across Compress street and the property of the compress company, and finally find its way into natural depressions. The construction of these buildings and down spouts had the effect of diverting all of the water which fell upon them from the east to the west, and depositing it to the west of their west wall, where its only outlet was either to the north or south on Compress street. In addition to the fact that the water thus falling upon the roof of these buildings was thus discharged west of them, whereas otherwise it would have flowed to the southeast and never reached that point, the construction of the west wall of these buildings effectually blocked the flow of surface waters which otherwise would have passed across the compress company's property in a southeasterly direction. The condition which was created by the construction of these buildings and down spouts was a permanent one and had existed ever since the year 1914. Plaintiffs in their petition alleged this diversion and obstruction of the natural flow of the water by reason of the buildings and down spouts, and in addition charged that in the year 1918 the compress company had placed concrete gutters, which discharged the water from these down spouts into Compress street, and had raised the level of the ground to the west of their buildings or platforms so as to throw it back into Compress street and across their prop-

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

erty. The damages which they claimed were alleged to have accrued since October 12, 1918. For the purposes of this appeal, we think a more detailed statement of the pleadings and evidence is unnecessary.

The cause was submitted to the jury on eight special issues, four of which, the first, third, fifth, and seventh, called for findings of damages in various particulars. The first, third, and seventh of these issues were answered in favor of the compress company, which made it unnecessary to answer the second, fourth, and eighth issues. The fifth and sixth special issues and their answers, which were favorable to appellees, follow:

"Question No. 5: Do you find from a preponderance of the evidence that plaintiffs or either of them suffered any discomfort, inconvenience, and annoyance as a result of the discharge of the waters from the roof of the sheds of the defendant into Moran or Compress street, or by the obstruction, if any, of any surface waters by defendant, which would naturally have flowed to the east or southeast across said street, and the conditions, if any, caused thereby. Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 6: If you answer the foregoing question 'yes,' then find from the evidence and state what amount of damage, if any, they each suffered on account thereof? Answer: Sarah E. Howard, $650.00; Robert Howard, $100.00."

[1] The compress company excepted to the fifth special issue, upon the express ground that it did not distinguish between things done prior to August 25, 1915, when the common law was in force as to surface waters, and things done subsequent to that date, and therefore made the act abolishing the common-law retroactive and unconstitutional; and that the effect of the issue was to charge that the buildings and down spouts which were lawfully constructed under existing law could be now held to be wrongful, thus rendering the law retroactive and void under the Constitution. The compress company also requested a special charge, instructing the jury that in considering the issues submitted to them they should disregard any injury, if any, resulting to appellees by reason of the operation of the pipes, down spouts, and elbows, and merely consider such injuries, if any, as resulted to plaintiffs from October 12, 1918, to October 12, 1920, from things done by the defendant after August 25, 1915. In addition, the compress company requested a number of special issues limiting the amount of recovery to damages resulting from acts of defendant committed after August 25, 1915.

Under the common law as enforced in this state prior to the Act of 1915, the owner of real property had the right to divert surface waters falling on his own premises and to repel surface waters from his premises without incurring liability to adjacent property owners. Gross v. Lampasas, 74 Tex.

197, 11 S. W. 1086; Barnett v. Irrigation Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636; Walenta v. Wolters (Tex. Civ. App.) 186 S. W. 873 (writ of error refused), and other cases.

The Act of May 29, 1915, which became effective August 25, 1915, and is now embodied in Vernon's Statutes, 1918 Supplement, as article 5011t, provides:

"That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby."

In so far as this act may by its language apply to structures erected prior to and in existence at the time that act went into effect, if it be susceptible of that construction at all, it was violative of that provision of our Constitution inhibiting the passage of retroactive laws. This was the holding in Gaertner v. Stolle (Tex. Civ. App.) 238 S. W. 252, in which a writ of error was refused. We therefore sustain the assignments of error which complain of the overruling of the exception to special issue No. 5, and of the refusal to give the special charge and special issues referred to above.

[2] Appellant requested several special issues in which the damages to appellees' property were limited to such as arose from waters overflowing their property. Article 5011t, above quoted from, makes it unlawful to impound or divert the natural flow of surface waters "in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded." Without passing specifically upon each of the requested issues, and for the guidance of the court upon another trial, we hold that the statute clearly from its express language only inhibits impounding and diversion of surface water in such a manner as to damage the property of another by overflow; and in so far as the suit is based upon a violation of this statute the issues submitted to the jury should be so framed as to limit the recovery to property damage caused by overflow.

The remarks of appellees' counsel in his closing speech to the jury, which appellant complained of, were clearly improper as held by the trial court, and should not be repeated upon another trial of the case.

[3] The evidence was sufficient to warrant submission of the case to a jury, and all assignments of error questioning its sufficiency are overruled. In view of another trial, we refrain from discussing the testimony.

For the errors pointed out, the trial court's judgment is reversed, and the cause remanded to that court for a new trial.

Reversed and remanded.