**HIGGINS et al. v. SPEAR et al.　(No. 1844.)**

(Court of Civil Appeals of Texas. El Paso. March 25, 1926. Rehearing Denied April 15, 1926.)

1. **Waters and water courses** ☞118—Statute makes obstruction of natural flow of surface water actionable (Acts 34th Leg. [1915] 1st Called Sess. c. 7 [Vernon's Ann. Civ. St. Supp. 1918, art. 5011t]).

Acts 34th Leg. (1915) 1st Called Sess. c. 7 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), changed rule that one has no legal right to have surface water naturally flowing on his land to pass thence to adjoining land, and that owner of such land may repel such surface water without liability, and made obstruction of natural flow of surface water actionable.

2. **Waters and water courses** ☞118—Defendants held not liable for any damages sustained by plaintiffs caused by water diverted from its natural flow by others, and by defendants' embankment, thrown back upon plaintiffs' land (Acts 34th Leg. [1915] 1st Called Sess. c. 7 [Vernon's Ann. Civ. St. Supp. 1918, art. 5011t]).

Where embankment erected by defendants on their land obstructed flow thereon from plaintiffs' land of water, diverted from its natural flow by act of third persons, defendants *held* not liable for any damages sustained by plaintiffs caused by such water being impounded by defendants' embankment and thrown back upon plaintiffs' land (Acts 34th Leg. [1915] 1st Called Sess. c. 7 [Vernon's Ann. Civ. St. Supp. 1918, art. 5011t]).

3. **Waters and water courses** ☞118.

Land is subject to no servitude to receive on it water, natural flow of which has been diverted to it.

4. **Waters and water courses** ☞118—Defendants would be liable for injury to land resulting from embankment obstructing natural flow of surface water (Acts 34th Leg. [1915] 1st Called Sess. c. 7 [Vernon's Ann. Civ. St. Supp. 1918, art. 5011t]).

Under Acts 34th Leg. (1915) 1st Called Sess. c. 7 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011t), defendants could not obstruct flow of any water naturally escaping from lowlands into which waters of creeks first flowed, when flooded, and for any injury resulting from such water being impounded upon plaintiffs' land by defendants' embankment they would be liable.

5. **Appeal and error** ☞931(4)—Issue not covered by findings made at appellants' request presumed found adverse to them.

Where findings in suit to recover damages caused by water being backed upon plaintiffs' land by embankment erected by defendants were made upon plaintiffs' (appellants') request, and there was no exception thereto for incompleteness nor any request for additional findings, it would be presumed that trial court found as warranted by evidence that no injury resulted from impounding of waters which would naturally have flowed across plaintiffs' land.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

Suit by Mrs. Belle Bean Higgins and another against W. W. Spear and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

C. W. Croom and Samuel Whitman, both of El Paso, for appellants.

Armstrong & Morrow, of El Paso, for appellees.

HIGGINS, J. This is a suit by the appellants to recover damages to crops caused by water being backed upon their land by an embankment erected by the appellees upon land belonging to the appellees, and for a

mandatory injunction for the removal of such embankment. From a judgment denying any relief the plaintiffs appeal.

The findings of the trial court are lengthy and present the facts in detail. It is not necessary to state the same in full. In brief, the facts found and which we hold the evidence supports, are as follows:

The parties own adjoining tracts of land. There is a lowland tract known as a slough, commonly accepted to be an old river bed, extending through the plaintiffs' land into the defendants' land. In a southerly and westerly direction from the land of the parties is another tract of lowland known as a slough. In the neighborhood of the lands of the parties is what is known as Arroyo de Macho or Burro creek; also what is known as Madden draw. Burro creek and Madden draw are dry runs, but when the rains fall the surface water concentrates and flows therein. Prior to the construction of certain ditches, embankments, and irrigation canals hereinafter mentioned, the flood waters of Burro creek and Madden draw flowed naturally into the lowland or slough to the south and west of the lands of the parties, and thence into the Rio Grande river at a point west of the parties' lands except when the lowland was "entirely overflowed," in which event the overflow water would back up on plaintiffs' land and pass thence through the old river bed onto the defendants' lands.

Prior to July, 1924, third parties, for whose acts neither the plaintiffs nor defendants are responsible, constructed upon their own lands certain ditches, embankments, and irrigation canals which diverted the natural flow of the waters of Burro creek and Madden draw from the aforesaid lowland to the south and west of the lands of plaintiffs and defendants, whence most of it would have passed into the Rio Grande river without touching the lands of the parties to this suit. In consequence of this diversion the water passed into the old river bed or slough on plaintiffs' land, and thence onto the defendants' land. Prior to July, 1924, the defendants constructed upon their land for the protection thereof from such flood waters an embankment across said old river bed. In consequence of this embankment water flowing in the river bed in July, 1924, and in September, 1925, was impounded and backed up on the plaintiffs' land damaging growing crops upon about 33 acres of plaintiffs' land, to their damage in the sum of $1,400 in July, 1924, and $785 in September, 1925. The rains causing the flow of this flood water were heavy, but not unprecedented, and might reasonably have been anticipated.

The trial court concluded:

(1) Defendants were liable in damages for any act of theirs which interfered with the natural flow of the surface water.

(2) Defendants were not liable for any act of theirs reasonably necessary to protect their land from the overflow of surface water diverted to their land by the aforesaid embankments, canals and ditches.

(3) Defendants, in view of the artificial diversion of surface water to their land, were justified in erecting embankments to provent the overflow of their lands by the waters artificially diverted.

(4) Defendants are not liable to plaintiffs for the damages sustained by the overflows in 1924 and 1925, and are not entitled to the relief sought.

Under the Act of 1915, chapter 7, First Called Session (article 5011t, Vernons' Ann. Civ. St. Supp. 1918), it is made "unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded."

Appellants assert that under this act it was unlawful for appellees to erect the embankment upon their land across the old river bed, and appellees are liable in damages for the injury caused by the water impounded by the embankment and backed upon their land. In their brief they say this act is omitted from the 1925 codification. Such omission, however, does not affect the injury sustained in 1924. Since we are of the opinion there is no liability for the damage sustained in that year, it is unnecessary for us to consider the effect upon the rights of the parties by the omission noted, for it is certain such omission did not strengthen the position of appellants. They do not so contend.

[1] Prior to the act of 1915 it was the established law in this state that one has no legal right to have surface water naturally flowing upon his land to pass thence to adjoining land; that the owner of the adjoining land, in the "due exercise of dominion over his own soil," may erect an embankment upon his land and thereby repel the surface water naturally flowing upon the adjoining land without incurring any liability to the owner of the adjoining tract for thus obstructing the flow of such surface water. Barnett v. Matagorda, etc., 83 S. W. 801, 98 Tex. 355, 107 Am. St. Rep. 636. The act cited changed this rule and made actionable the obstruction of the natural flow of surface water the same as the obstruction of water flowing in a water course. It follows that in 1924 it makes no difference, so far as concerns the rights of the parties, whether the water, the flow of which was obstructed by

defendants, be considered surface water or water flowing in a well-defined channel or water course.

[2] From the facts stated it is shown that the embankment erected by the defendants obstructed the flow of water which did not naturally flow across the land of plaintiffs and onto the defendants' land; that the water thus obstructed and impounded had been diverted from its natural flow by the acts of third persons upon land owned by them, and for whose acts neither of the parties to this suit are responsible.

[3] Land is subject to no servitude to receive upon it water, the natural flow of which has been diverted to it. The act of 1915 relates only to the "natural flow." It imposes upon land no servitude to receive water which did not naturally flow upon it. In 27 R. C. L. p. 1108, it is said:

"A riparian proprietor may erect any work—bank, levee or dike—in order to prevent his land being overflowed by any change in the natural condition of the stream and to prevent its old course from being altered."

Again, at page 1151:

"Under both the civil and the common law, water which naturally flows from higher to lower land may continue to do so without subjecting the upper owner to any liability therefor, but even in the jurisdictions where the civil law rule obtains, the servitude which the owner of the higher adjoining land has upon the lower land for the discharge of surface water naturally flowing on the lower land from the dominant estate extends only to surface water arising from natural causes, such as rain and snow, and cannot be augmented or made more burdensome by the acts or industry of man, and it is the generally recognized rule both of the civil and the common law that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter."

In Kauffman v. Griesemer, 26 Pa. 407, 67 Am. Dec. 437, it is said:

"The plaintiffs had no right to insist upon his receiving waters which nature never appointed to flow there; and against any contrivance to reverse the order of nature, he might peaceably and on his own land take measures of protection. The sod dam * * * was * * * a lawful erection." It was no more a nuisance "than the shutting the door against an unwelcome visitor is a nuisance. The only servitude the plaintiffs could claim in the defendant's land was that it should receive the overflow which was natural and customary. * * * The elevation which protected him in ordinary times could not be reduced without his consent, and when the undue liberty was taken, he was not a wrongdoer in protecting himself from the consequences."

Farnum on Waters, vol. III, p. 2576, par. 886, says:

"If one landowner by embankments and artificial erections of any kind on his own land causes surface water to flow onto his neighbor's land in a manner in which it would not but for such erection, the proprietor upon whose land the water is thrown may erect barriers, against it."

And again, at pages 2579 and 2580:

"An upper owner, who, by artificial means, so drains his lands as to collect and discharge surface water in undue and unnatural quantities upon the land of a lower proprietor is not entitled to restrain the maintenance of a dam by the latter, in the exercise of his right to protect himself against such invasion of his premises."

Appellants say that the doctrine of the authorities cited applies only against those who divert the natural flow, and have no application against those who are not parties to the diversion. But, in our opinion, appellees' land is not burdened with any servitude to receive water not naturally flowing upon the same, so it matters not who diverted the water. Appellees, in the "due exercise of dominion over their own soil" (Barnett v. Matagorda, etc., supra; Gannon v. Hargadon [Mass.] 10 Allen 110), had the right to erect the embankment complained of to repel the water wrongfully diverted and thrown upon their land. If the building of the embankment by defendants damaged the plaintiffs, it is damnum absque injuria. The appellants' remedy is against those who wrongfully diverted the water in the first instance.

A case in point sustaining this view was presented to the Supreme Court of Illinois in Wills v. Babb, 78 N. E. 42, 222 Ill. 95, 6 L. R. A. (N. S.) 136. There the waters of a creek had been diverted by third persons in such a way as to throw the waters onto land owned by Babb. Babb built a dike, which had the effect of throwing the water onto Wills. Wills brought suit to enjoin the erection and maintenance of this dike. The court held that Babb had the right to protect his land by the dike complained of. In the opinion it was said:

"From the view, however, we take of this case, the finding of the chancellor upon the question whether or not the repair and construction of said levees will materially affect the flow of water upon the land of appellant is not material, as we think it clear the waters of Hadley creek have been diverted from their natural channel by the Caffrey cut, the filling up of the old creek and the construction of the Miller, Likes, and Atkinson levees, in such manner that appellees are justified in erecting a levee upon their east lines to protect themselves from the overflow of Hadley creek thus cast upon them. That is, by reason of the crowding of the waters of Hadley creek westward, a burden has been cast upon the lands of appellees that legally they are not bound to bear; and that the owners of such lands may lawfully erect such barriers along the eastern border of said lands as may be necessary to protect said lands from such overflow, or, in other words, that they may lawfully repel from their lands, by proper levees, the waters of Hadley creek which have been wrong-

fully cast upon their lands. Especially must this be true as they propose to erect said barriers upon their own lands, and all the waters which, they collect upon their lands by reason of such barriers will be discharged into a natural water course upon their own lands, and one which, from the evidence, appears to be amply sufficient to convey those waters to the Sny.
* * *

"It is, however, said on behalf of the appellant that he or his predecessors in title were in no way responsible for the change made in the course of Hadley creek. The same may be said of appellees and their predecessors in title. The appellant seeks to avail himself of the acts of the persons who in part contributed to the diversion of the waters of Hadley creek from their original channel, by insisting that these waters must now flow over the appellees' lands and his lands be relieved from such overflow. As the appellant predicates his right to maintain his bill upon the acts of the parties who in part changed the water course of Hadley creek, the appellees, we think, have the right to meet such claim by showing that their predecessors in title never consented to such change, and that the appellees may, as against the appellant, who predicates his right to have the overflow water from Hadley creek which legally belongs upon his land cast upon the appellees' lands, protect their lands from such overflow by placing upon their lands barriers which will divert said overflow waters off of their lands and back into their natural channel. By claiming a prescriptive right to flood appellees' lands by virtue of the acts of the persons who in part diverted the waters of old Hadley creek from its channel, the appellant makes the acts of those parties his own, and is bound thereby."

In the annotators' note to this case it is said:

"The cases which have dealt with the question of the right to embank against water which has left the channel of a stream have for the most part been cases dealing with flood waters which left the channel through natural means. Such are the cases cited by the court in the above opinion. But the settled principles of law would seem to support the rule that a landowner may embank against a stream purposely turned out of its natural course."

Another case somewhat in point is Gannon v. Hargadon, supra, cited with approval in Barnett v. Matagorda, supra.

We therefore conclude that appellees had the right to erect the embankment upon their land, and are not liable for any damage sustained by the appellants caused by water which had been diverted from its natural flow and by the embankment impounded and thrown back upon the appellees' land and the trial court properly so held.

But this ruling does not entirely dispose of the case.

The trial court found:

"(14) That but for the ditch H, I, and K, L, and the construction of the main canal and the erection of the embankment A, A, and the embankments of Bud Bean, F, G, and D, E, these waters would have flowed into the lowlands J,

J, and, to a large extent, have flowed thence into the river, without overflowing the lands of either plaintiffs or defendants. If sufficient quantity of water had collected as a result of the rains of either season some of this water would then have backed up and flowed over the lands of plaintiffs and defendants through what is known as the old river bed or slough. That in the rain of 1925 the principal volume of rain fell in the Madden draw country, and was carried thence through the ditch K, L, and down to the small embankment T, which was intended to prevent the overflow of lands of plaintiffs and defendants.

"(15) That the embankment T was not of sufficient size or strength to hold the waters from Madden draw and Burro creek, and which had been diverted from their natural course over the lands of plaintiffs and defendants, and that the breaking of this embankment T caused the overflow of the lands of the plaintiffs."

"(18) That the waters on the lands of the plaintiffs in 1924, and much the major portion of the waters on plaintiffs' lands in 1925, had come from the Madden draw country, and not from the Burro creek country, and had been conducted onto the lands of the plaintiffs through the ditch K, L.

"(19) That the natural course of the surface waters from Burro creek was not through the lands of the plaintiffs, but into the low country J, J, and thence to the river, except in cases where said low country was entirely overflowed and the water backed up onto the plaintiffs' land, and that the natural flow of the waters from the Madden draw was not through the lands of plaintiffs, but into the low country J, J, and the lands south and west thereof near Camp 90, and into the river, except where the lowlands filled up and the water backed onto the lands of the plaintiffs, and that never had the water from the Madden draw country overflowed Bud Bean's place and flowed onto the lands of the plaintiffs before the digging of the ditch H, I, and K, L."

"(21) That the embankment erected below the lands of plaintiffs and on the lands of defendants, by the defendants, did not and does not interfere with the natural flow of the waters from either the Burro creek region or the Madden draw region, except when the same is backed up from the low country J, J, as shown on the map, but does interfere with the flow of water caused by the erection of embankments, canals, and ditches by other persons than the defendants, and will hold waters flowing onto plaintiffs' land as a result of such artificial embankments, ditches, and canals."

[4] It thus appears that, while the waters of Burro creek and Madden draw for the most part naturally flow into the river without touching the lands of any of the parties, yet there are times when the lowlands into which the waters first flow become flooded, the water backs up, and a part escapes naturally through the old river bed, passing through plaintiffs' land into that of the defendants. We do not think the defendants, under the act of 1915, could lawfully obstruct the flow of any water which would thus naturally escape from the lowlands and pass through the old river bed. For any injury

resulting from such water being impounded upon the plaintiffs' land by the embankment complained of, the defendants would be liable.

[5] The trial court's first conclusion is evidently a recognition of liability in such a contingency. But there is no finding that any water would have naturally escaped from the lowlands into the old river bed in 1924 and 1925, or that any injury was caused by such water. The necessary implication from the express findings and conclusions of the trial court is that no injury resulted from the impounding of water which would have naturally flowed from Burro creek and Madden draw and passed into the river bed, for if there had been the court, upon its first conclusion of law, would have found against the appellees. The findings in this case were made upon appellants' request, and there is no exception thereto for incompleteness nor any request for additional findings. Therefore, since the evidence warrants the same, it will, independent of such implication, be presumed the trial court found that no injury resulted from the impounding of waters which would naturally have flowed through the old river bed. Gardner v. Watson, 13 S. W. 39, 76 Tex. 25; Silliman v. Oliver (Tex. Civ. App.) 247 S. W. 902.

For the reasons stated, no error is shown in the judgment rendered, and it is affirmed.