## Texas & Sabine Railway Company v. A. F. Meadows.

### No. 2664.

1.   **Railways—Damages.**—The owner of a water mill sued a railway company for damages alleged to have resulted from the fact that the road bed was constructed near and parallel to the stream which afforded water for the mill; that one result from throwing up the road bed was to loosen the sand, which was carried by heavy rains into the mill pond, which it filled up, thereby destroying the motive power which propelled the machinery of the mill. It was shown that the road bed was skillfully constructed, and that the natural flow of the water was not changed or impeded thereby. *Held*, that the railway company was not liable in damages.

2.   **Cases Reviewed.**—Railway Company v. Timmerman, 61 Texas, 660; Railway Company v. Holliday, 65 Texas, 512; and Railway Company v. Pape, 62 Texas, 331, reviewed and distinguished.

APPEAL from Tyler.   Tried below before Hon. W. H. Ford.
The opinion states the case.

*Sam T. Robb* and *J. P. Stevenson*, for appellant.—A railway company is not liable at common law for consequential damages sustained by a neighboring land owner from the manner in which its road has been constructed if the company has built it in a skillful manner and within the exercise of the power granted to the company. It is entitled to do the things within its location necessary and used for the construction, maintenance, and working of its road, and is not responsible except under statute for damages suffered in the reasonable exercise of this right. 5 Wait's Act. and Def., 302; Pierce on Railways, 197, 262–4; Moyer v. N. Y. Cent. R. R. Co., 8 Am. and Eng. R. R. Cases, 534–5.

It is believed that there is nothing in the statutes of this State changing the common law rule. Article 4174 of the Revised Statutes has reference alone to the proper drainage of the country through which the road passes, leaving open the natural streams, etc., which it crosses, and is not intended to embrace cases of this character.

*West & Chester, S. B. Cooper,* and *E. G. Geisendorff,* for appellee.—
If defendant constructed its road in a skillful manner for ordinary rail-
way purpose, but in such a manner that the wash from the same would
damage plaintiff's property, knowing or when by the exercise of reason-
able care and prudence it might have known that it would so damage his
property, then it would be liable to appellee for any damages resulting
from such construction.   G. C. & S. F. R. R. Co. v. Eddins, 60 Texas,
656; Const. 1876, art. 1, sec. 17; I. & G. N. Ry. Co. v. Timmerman, 61
Texas, 660; I. & G. N. Ry. Co. v. Pape, 62 Texas, 313; G. C. & S. F.
Ry. Co. v. Fuller, 63 Texas, 467; Sedgw. on Dam., 284; Pierce on Rail-
ways, 266–7.   G. C. & S. F. Ry. Co. v. Holliday, 65 Texas, 512; Craw-
ford v. Rambo, 44 Ohio St.

GAINES, ASSOCIATE JUSTICE.—This suit was brought below by appel-
lee against appellant to recover damages for an alleged injury to a water
mill.   It is averred in the petition that appellant constructed its railroad
near and parallel to the stream on which the mill was situated, and that
as an effect of heavy rains the sand which was loosened by the construc-
tion was carried into the stream and filled its channel as well as the
pond which retained the water that was to furnish the motive power of
the machinery.   The stream which supplied the pond was formed by two
tributaries running in a general direction east and west and forming a
junction a few hundred yards above the mill.   The railroad was con-
structed on the south side of the south fork.   There were several smaller
streams which flowed northwest into the south fork and were crossed by
the line of the railroad.

The evidence showed that after the road was constructed sand was
washed into the south prong and measurably filled its channel, and was
deposited over the bottom of the mill pond to the depth of several feet.
The effect was to clog the water wheel of the mill with sand and to
diminish the retaining capacity of the reservoir.   The defendant com-
pany introduced as a witness an engineer who testified that the road was
carefully and skillfully constructed, and there was no testimony which
tended to show that this was not true.   There was also testimony con-
ducing to prove that the surface of the land over which the railroad was
built and which was drained by the small tributaries of the south fork
of the mill creek above mentioned was composed of loose sand, and that
after the road was constructed the trees on it had been taken off for ties
and numerous roads made over it in hauling out the ties and timber.
This testimony also tended to show that the filling up of the plaintiff's
pond was caused by sand from this source.

The defendant company asked a special charge to the effect that if the
railroad was constructed in a skillful and proper manner the defendant
would not be responsible to plaintiff for any damage that may have re-

sulted from the washing of the sand thrown out in its construction into the mill pond of the plaintiff. The refusal to give this is assigned as error. The question presented by this assignment is also raised by another, in which it is claimed that the court erred in overruling a motion for a new trial on the ground of the insufficiency of the evidence to show any liability on the part of defendant.

If the railroad was properly constructed, can the plaintiff recover for the damages which he claims to have accrued to him in this case? Our Constitution provides that "no person's property can be taken, damaged or destroyed for or applied to a public use without adequate compensation being made." Art. 1, sec. 17. Under the provisions of other constitutions, which merely provided compensation to the owner for property taken for public use, it had been a question whether or not one whose property was immediately and directly damaged by a public improvement, though no part of it was appropriated, could recover for such damages; and in some cases it was held that where the result of the public work amounted to a practical appropriation, though no part was directly used, a compensation was to be allowed. The insertion of the words "damaged or destroyed" in the section quoted was doubtless intended to obviate this question and to afford protection to the owner of property by allowing him compensation where by the construction of a public work his property was directly damaged or destroyed, although no part of it was actually appropriated. But we do not think that provision was intended to apply to such consequential damages as are claimed in this case. In Mills on Eminent Domain, section 183, it is said that "if land is injured and in consequence of an act which would have been the subject of an action at common law but for the statute, compensation may be required and awarded." Citing Chamberlain v. Railroad Co., 31 Law Jour. (Q. B.), 201. It may be doubted if our Constitution intended to extend the recovery of compensation beyond the rule here indicated. That is to say, if a railroad company condemned or otherwise acquired for its purposes a right of way over land, and in constructing its road did an act injurious to an adjacent or neighboring proprietor, for which if done by the original owner he would have been responsible at common law, the company should be liable to compensate the proprietor so injured. We do not understand that it was intended to give an action against those constructing public works for acts which if done by persons in pursuit of a private enterprise would not have been actionable.

Admitting for the argument's sake that the road was skillfully constructed, does the plaintiff show any cause of action in this case? We think not. Our statute provides that railroads must be so constructed as not to interfere with the natural flow of the water (Rev. Stats., art. 4171), and we have numerous cases in which parties have been permitted to recover against railroad companies for failure to comply with this law. But

there the cause of action is predicated upon the failure to construct the railroad in the proper manner so as to permit the natural flow of the water. In the present case neither the living water nor the surface water has been interrupted or diverted. The defendant has properly constructed its road bed, and in so doing has displaced from its original position considerable quantities of sand, which, as plaintiff claims, has flowed into his pond and obstructed the operation of his mill. If the owners of the sand hills which constituted the water shed from which the waters flowed into the stream from its south side had cleared and ploughed them for purposes of cultivation it would seem probable that the same result from the washing of the sand would have occurred if the railroad had never been built. Would the land owners have been responsible for the damages resulting in such a case? We think not.

If the owner of the land for his private uses had constructed a tram or other road, and had thereby loosened the soil by cuts and fills, and the sand so freed had been carried by water flowing in its natural channels into plaintiff's pond and had filled it, would such owner have been responsible for the consequences? This question must also be answered in the negative. We see no reason why a corporation constructing a railroad for public uses should be held to a different rule of liability. The cases cited by appellee do not support a different rule.

In Railway Company v. Eddins, 60 Texas, 656, and Railway Company v. Fuller, 63 Texas, 467, each of the appellees (who were plaintiffs below) was the owner of property fronting on a street which was diminished in value by the construction of the railroad along a street. They had an easement in the street, and in so far as the construction and operation of the railroad interrupted that easement and interfered with that right it was a direct injury to their property.

Railway Company v. Timmerman, 61 Texas, 660, was a case in which damages were sought to be recovered for the destruction of property by fire communicated by the sparks of a passing engine. The opinion recognizes the doctrine that if there had been no proof of negligence in permitting the escape of the sparks there could be no recovery.

In Railway Company v. Holliday, 65 Texas, 512, the foundation of the action was the alleged failure of the company to provide sufficient water ways. This was a failure of a statutory duty, and was clearly negligence.

In Railway Company v. Pape, 62 Texas, 313, the ground of action was similar to that in the Holliday case. Crawford v. Rambo, 44 Ohio State, was a suit to restrain an interference with the natural flow of water in a stream. It is apparent that none of these cases sustain the contention that where a railroad is properly and skillfully constructed, and the flow of the water across the track is not diverted, the company can be held liable for damages resulting from the sand which was loosened by its construction being carried by freshets upon the land of another proprietor.

If a corporation do an act which it acquires a right to do by virtue of its franchise granted for a public use, and if a person having no franchise could not have done the act lawfully, and the property of another is directly damaged, then we understand that the constitutional provision requires that notwithstanding the franchise the corporation shall be liable. In other words the Constitution prohibits the grant of franchise to a corporation which will carry with it immunity for damages which may proximately result to property from the exercise of the privileges granted.

We may recur to the cases of Railway Company v. Eddins, and Railway Company v. Fuller, above cited, for an illustration of the principle. There but for the franchise granted by its charter the railroad company could not have constructed and operated its line of road along the streets of cities through which it might run. Property fronting upon the streets was damaged by reason of the exercise of the powers granted by the charter, and the company was properly held liable to make compensation. In the present case the act done was lawful for any owner of the land to do without authority from the Legislature, and hence as to the company it was not an act unlawful but for the franchise granted to it. The owners of land may make such excavations upon them as they see fit without liability for such damages as are claimed to have resulted in this case—provided they are not negligently or wantonly made. The act of the defendant company was an act lawful for any proprietor to do and not an act merely made lawful by the grant of a franchise. We therefore think the court erred in refusing the charge above mentioned and in overruling the defendant's motion for a new trial.

This renders it unnecessary to discuss several other questions that are presented in the briefs. We will remark, however, that if it had been shown that the capacity of the pond could have been restored at a less expense than the depreciation in the value of the mill as it stood, the measure of damages would have been the cost of restoring it. There was evidence that the damages could have been repaired by raising the dam, but the cost of this work was not shown. If this had been shown, and the cost was less than the depreciation in the value of the mill as it stood, to it should have been added the value of the use of the mill during the time it necessarily remained idle.

For the error of the court in overruling the motion for a new trial and refusing the charge above referred to, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 15, 1889.