## H. GROSS v. THE CITY OF LAMPASAS.

### No. 6253.

1.  **Surface Water.**—A land owner has the right to protect it against surface water, and to do so can erect walls upon his land to prevent its flow upon it. Having this right he has the same right to exact of the municipality in which the land lies that it shall perform its duty to the public as do others with reference to surface water dammed up by such wall so constructed.

2.  **Ditches and Drains in City.**—In constructing ditches for drainage made necessary by the erection of walls to protect against surface water by a lot owner it is the duty of the city to construct them with ordinary skill and to cause thereby as little injury to the adjacent lot owner as would be consistent with the right to make the improvement.

3.  **Same.**—An adjoining lot owner is entitled to damages which may be proximately the result of negligent construction of drains or ditches, causing injury to the value of the lots or danger to those using the property.

APPEAL from Lampasas. Tried below before Hon. W. A. Blackburn. The opinion states the case.

*Bassett, Muse & Muse,* for appellant.— 1. The water complained of is not water in a stream or water-course, but is essentially surface water, frequently spoken of as a common enemy against which every owner of the soil has a right to fight. Lessard v. Stram, 62 Wis., 112; S. C., 51 Am. Rep., 715, 717; Barkley v. Wilcox, 40 Am. Rep., 519; Gibbs v. Williams, 37 Am. Rep., 241–248; Taylor v. Fickas, 31 Am. Rep., 114; A. T. & S. F. Ry. v. Hammon, 31 Am. Rep., 216; Angell on Water-courses, secs. 4, 4a, 4d.

2. It is not to be denied, as was said by this court in Gulf, Colorado & Santa Fe Railway Company v. Helsley, 62 Texas, 594, that there is much conflict of authority on the question of dominant and servient estates between those courts which follow the rule of the civil law and those which assert a different rule under the common law; but it is believed that the great weight of authority as well as the better reason is in favor of the proposition that in the absence of controlling legislation the owner of the land has the legal right to occupy and improve it in such manner and for such purposes as he may see fit, either by changing its surface or by the erection of buildings or other structures, although the result may be to interrupt the flow of surface water over it, whether flowing from a

street or highway or other adjoining land; and the fact that his premises are lower than those from which the water comes to him does not restrict or modify his right to fight the surface water from his own. The incidental injury to another from the exercise of his lawful right would be *damnum absque injuria.* A. T. & S. F. Ry. Co. v. Hammon, 31 Am. Rep., 216; Taylor v. Fickas, 31 Am. Rep., 114; Pettigrew v. Evansville, 3 Am. Rep., 53; Barkley v. Wilson, 40 Am. Rep., 519; Gibbs v. Williams, 37 Am. Rep., 241–48; Abbott v. K. C. Ry. Co., 52 Am. Rep., 581, 587, 588, 590; Ang. on Watercourses, secs. 108m, 108a; Whitaker's Smith on Neg., 75, note.

The authorities might be multiplied indefinitely were it deemed necessary. As was said by Chief Justice Dixon in Hoyt v. Hudson, 27 Wisconsin, 656, "the proprietor of an inferior or lower tenement or estate may if he choose lawfully obstruct or hinder the natural flow of surface water thereon, and in so doing may turn the same back upon or off or over the lands of other proprietors without liability for injuries ensuing from such obstruction or diversion."

3. The doctrine is especially applicable to urban property, the application to which of any other rule would, as is said in several of the cases cited, be contrary to public policy by interfering with and in many cases prohibiting the improvement of property situated in our growing towns and cities. Under the rule contended for by the appellee many of the most valuable hillside lots in the city of Austin must have been left unimproved in order to furnish a passway for surface water from the dominant estates above instead of being, as they are, occupied by residences and places of business erected by the enterprising owners.

4. If in the erection of the wall on his own ground the plaintiff has done no more than exercise a legal right in fighting the surface water from his own premises, his doing so can certainly constitute no justification or excuse for the injury to his property caused by the construction by the city of the open sewer around his premises.

5. And if it were conceded that the plaintiff had done an unlawful act in erecting the wall, that would neither justify nor excuse the city in retaliating with another unlawful act to his injury. The law will not thus sanction the attempted rectification of one wrong by the perpetration of another.

6. But if the city had the right to build the sewer to carry off the water which was thrown back on the streets, etc., by the erection of the plaintiff's wall, it would still be bound to construct it in a proper manner; and the plaintiff is entitled to recover for the injury to his premises caused by the inadequate capacity of the sewer, the defective and unskillful manner of its construction, and the unfinished and dangerous condition in which it has been suffered to remain. It is a familiar rule that one who undertakes, even gratuitously and without legal obligation,

to do an act and enters upon its performance is responsible for the results of negligence or want of skill in its execution whereby another suffers injury.

*Chas. L. Lauderdale* and *Matthews & Wood*, for appellee. — 1. The drain which ran through plaintiff's premises was an ancient natural water course, and he had no right to obstruct same so as to throw the water back on defendant's streets and alleys and other adjoining property. Washb. on Eas., 355; Palmer v. Waddell, 22 Kans., 352; Earl v. De Hart, 1 Beas., 280.

2. There having been a well defined channel through plaintiff's lots through which surface water was accustomed to flow after rains, and plaintiff having obstructed such flow by building a rock wall across such channel, and thus flooded defendant's streets and alleys, the defendant had a right to dig the ditch in its streets around plaintiff's property to carry off the water.

3. The court having tried this case without the intervention of a jury, the plaintiff not having alleged that any part of his premises was taken or destroyed, the defendant having plead a general denial, and having specially denied that there was any damage or injury to plaintiff's premises, and having alleged that on the contrary said premises were specially and peculiarly benefited, improved, and enhanced in value by the digging of said ditch complained of, that said improvement, benefit, and enhancement in value was not general as to other private property in the neighborhood of said premises, but was almost entirely confined to said premises, and all of these issues having been found (substantially) for the defendant, such findings constituted a full and complete defense to plaintiff's suit, fully warranting and sustaining the judgment of the court. Art. 375, Rev. Stats., as amended at regular session 17th Leg.; Railway v. Ferris, 26 Texas, 603–4; City of Elgin v. Eaton, 25 Am. Dec., 412; 25 Am. Dec., 321, 324, 326.

4. Though the appellee (defendant below) was clothed with full power to enter upon and use its public streets for the purposes of the construction and the maintenance of sewers, ditches, drains, etc., therein, it was not liable for failure to exercise that power nor for any incomplete or negligent exercise of such power, unless by the negligent exercise of such power the plaintiff's property was injured or damaged more than it would have been in case of the total non-exercise of such powers—more than it would have been had the defendant not dug the ditch complained of in this case. Rev. Stats., art. 375; City of Navasota v. Pearce, 46 Texas, 525; Seefort v. City of Brooklyn, 54 Am. Dec., 664–6.

HENRY, ASSOCIATE JUSTICE.—We take the statement of the pleadings of the parties from their briefs.

The appellant Gross, who was plaintiff in the court below, sought to recover of the appellee, the city of Lampasas, as defendant, damages for alleged injuries to his homestead premises, caused, first, by the overflow of surface water into the plaintiff's lot, caused by the grading and draining done by the city, whereby water was conducted through ditches to the boundary of plaintiff's premises and precipitated thereon in larger quantities and with more destructive force than before, and no sufficient outlet being provided for its escape the plaintiff's premises were overflowed and injured thereby; second, by the digging of a broad and deep ditch to the west and north of the plaintiff's premises between the sidewalk and the street, which cuts off convenient access to and from the city, endangers the lives and limbs of his family, and destroys or impairs the comfort, convenience, and the beauty of the premises for the purposes of a home; and third, that the open sewer or ditch complained of is so constructed as to connect with and receive the water from a covered ditch or sewer above and from other lateral ditches and sewers emptying into that complained of at right angles, that its capacity is wholly inadequate to carry off the water so brought to and upon it, and the flow of the water is retarded by the unskillful manner of its construction, being walled up with rough stone, and by lateral ditches or drains pouring into it at right angles, and by the want of any sufficient outlet, whereby the plaintiff's premises are overflowed and injured.

The appellee (defendant below) pleaded:

1. A general denial.

2. A special plea averring the public character of the streets in which the ditch or drain complained of was excavated, and of other streets in which other ditches and drains complained of were excavated, and that the excavation of said ditches or drains on the west and north sides of plaintiff's property, and about which he in this suit complains, was such reasonable, proper, and lawful use as defendant had a right to make of such streets for the purpose of carrying off the water naturally falling,. gathering, and forced upon said streets.

3. A special plea averring that at all times since the digging of said ditch along the west and north sides of plaintiff's lots plaintiff has had from said defendant full warrant and authority to enter upon and make for himself upon and across said ditch or drain a covering or bridge upon any or all thereof, of all of which he has been fully advised, and averring the unhealthy, offensive, undesirable, and dangerous condition of plaintiff's premises, and the permanency of such condition just prior to and at the time of digging of said ditch complained of, and alleging its right to use said streets for the purpose of excavating said ditches and carrying said waters, as elsewhere in defendant's answer more fully alleged; and denying that plaintiff's said premises or any part thereof was taken by defendant, or that plaintiff's premises were damaged, injured, or depreci-

ated in value by the acts complained of against defendant, and alleging that on the contrary the plaintiff's said premises were by the digging of said ditch complained of peculiarly and specially improved and enhanced in value, and that the health, comfort, and convenience and safety thereof as a home was materially and greatly ameliorated and increased thereby, and that such benefit and improvement was not general or equal as to other private property in the neighborhood of said premises, but was almost entirely confined thereto.

4.   A special plea alleging that defendant had by prescription acquired an easement to have the waters that flowed off from the streets, alleys, and public grounds, and from more than a thousand acres of land west of said city, through and over its said streets, flow off through a certain well defined natural channel running through said premises; and further alleging in said special plea the broken and mountainous nature of the surface of the country in and around said city; that said waters gathering into and flowing through said defined channel through plaintiff's said premises had nor could have no other means or direction of outlet than through said channel running through plaintiff's said premises as it had flowed from time immemorial, and that the waters flowing through said channel, before and after reaching the same, were gathered together in such volume and were flowing with such certain directness and force as to have by reason of all of said facts and circumstances the character of a water course, and to require the application of the same rules of law in regard to the obstruction or diversion thereof as to well defined continuously flowing streams of water; and further alleging that by reason of said facts, and of the fact that said premises were by nature so located as naturally to receive and carry off all the waters naturally falling and gathering upon said public streets, alleys, and grounds; that said streets, alleys, and grounds were the superior heritage or estate, and said premises the inferior heritage or estate, and that said inferior heritage owed a natural duty or servitude to said superior estate to receive and carry off the said waters; and that said plaintiff in his own wrong willfully and maliciously, without resultant benefit to himself, permanently obstructed the flowing of said waters through said natural channel, thereby as an immediate and necessary consequence causing a public nuisance, obstructing the said public streets, alleys, and squares of said city, and seriously threatening, endangering, and impairing the health, safety, comfort, and convenience of its citizens and of the general public, and that said defendant then, as it had a lawful right and duty to do, excavated said ditch, as it was necessary to do for the purpose of and as the only means of abating said nuisance and providing an escape for said waters so obstructed by plaintiff's own wrongful acts, etc.

The findings of the court upon this question were as follows:

"That there was a drain or natural depression in the ground running

and meandering for the distance of about one mile southwest from plaintiff's residence in and through the said city and running in a northeasterly direction through plaintiff's said lots; that said drain or depression had no perceptible banks or ditch or bed until it reached within about one hundred and fifty yards of the south boundary of plaintiff's said lots, and that for said distance of about one hundred and fifty yards from the plaintiff's south boundary there was a drain with perceptible banks in many places from one to three feet high and ten or twelve feet wide.

"That said drain and depression from time immemorial had been the natural channel, drain, or depression which had carried the rain and surface water that fell on a thousand or more acres of land lying west, southwest, and south of plaintiff's said lots, beginning more than a mile southwestwardly from plaintiff's lots and running northwestwardly through said city and through plaintiff's lots and into McVay Branch, thence to Hanna Branch, and thence into Burleson and Sulphur Creeks.

"That said drain at times in the vicinity of Third Street and plaintiff's lots two or three hundred feet north of said street was during very heavy rainfalls from three to five feet deep.

"That the water did not run but a few hours after a rainfall in said drain.

"That said drain carried only surface water, there being no springs or permanent supply of water in said drain.

"That Pecan and Third Streets in said city for more than twenty years prior to the 1st day of January, 1884, had been used as public highways and streets.

"That about the 1st day of January, 1884, plaintiff erected a rock wall across the southern boundary of his said two lots, the western extremity of said wall being on said Pecan Street and running thence eastward about one hundred and thirty feet, and being about six feet high and about eighteen inches thick, the rock being laid in mortar, and said wall being wholly on plaintiff's land.

"That said wall caught the water flowing along said drain, and during heavy rains would back the water from the wall over said Pecan and Third streets and still further south on other public and private property, and that without an outlet would have created an almost permanent pond of water, extending from said south wall over Pecan and Third Streets and other land in said city.

"That the ditch on the west and north of plaintiff's property is not skillfully walled.

"That said ditch does not constitute either a public nuisance or damage plaintiff's property, which was enhanced in value by said ditch even in its unskillful and unfinished condition after the erection of said wall.

"That the ditch detracts from the convenience and attractiveness of

plaintiff's property, and that there is more or less danger to persons passing over and along the same."

The judgment rendered was that neither party should recover the relief sought against the other, and that plaintiff pay all costs of suit.

Plaintiff appealed and complains that "the court erred in failing and refusing to render judgment for the appellant, because it appears from the judge's conclusions of fact that appellant, who was plaintiff below, had sustained injury and loss through the act of the appellee, defendant below, in digging the open sewer or ditch, under the circumstances shown in the judge's conclusions, along and adjacent to the boundaries of the plaintiff's premises, and through the negligent and unskillful manner of its construction, the facts found by the judge constituting no justification or excuse for the act of the defendant in digging said ditch or sewer; and even if the digging of it had been justified by the facts, the defendant should still have been held liable in damages for the defective and unskillful manner in which the work was done."

After his finding in regard to the digging of the ditch and the effect thereof, the judge proceeds as follows:

"I conclude that the plaintiff having erected said wall, rendered it necessary for defendant to either let a stagnant pond of water stand for the greater portion of the year within a few feet of plaintiff's south door and in the midst of other residences or to dig a ditch and let the water escape. And while I conclude plaintiff's property without said wall would be damaged, yet find that with said wall that his property is not damaged by said ditch; and as I hold that his own wrongful act created the necessity for the ditch, and that his property was not damaged by digging the same under the facts existing at the time it was dug and since that time, I hold that he is not entitled to recover anything on that account."

We think that under the facts of this case plaintiff enjoyed the right to build the wall upon his own land and prevent its overflow by the surface water. Lessard v. Straum, 51 Am. Rep., 715. Having this right, plaintiff stood with regard to the nuisance created by the surface water after it had been obstructed by the wall as did other people affected by it, and just as he would have stood if not previously connected with it in any way.

The city had exclusive control over its streets, including the right to construct the ditch for the purpose of draining and carrying off the water. Rev. Stats., art. 375.

The court erred in its conclusion that plaintiff committed a wrong in building the wall that caused surface water to accumulate and become a nuisance.

The conclusion that plaintiff was not damaged by the ditch is made to

depend upon the theory that his erecting the wall was a wrongful act, and must fall with the incorrect theory on which it depends.

The right of the city to construct the ditch along the street is given by the law, and existed without any regard to plaintiff's previous action. It was the duty of the city, however, to construct the ditch with at least ordinary skill, and make it as little injurious to plaintiff and his property as could be done consistently with its right to make the improvement.

Other findings of the court show the manner of its construction was not only injurious in a pecuniary aspect to plaintiff's property, but that it was dangerous to persons. We infer that by that it was intended to be understood that danger under some circumstances was encountered in crossing the ditch to and from plaintiff's lot.

We find nothing in the record showing that the ditch may not be so constructed as not to injure the value of plaintiff's property and protect persons crossing it from all danger.

If the ditch as constructed is subject to these charges, and no facts exist to excuse defendant from its obligation to construct it with sufficient skill not to cause such wrongs, plaintiff ought to have judgment for such damages as proximately result to him from them. The judgment is reversed and cause remanded.

*Reversed and remanded.*

Delivered May 31, 1889.