**CITY OF FORT WORTH, Appellant,**

v.

**Mrs. Eddie Buchanan MILLER, Appellee.**

No. 16102.

Court of Civil Appeals of Texas.

Fort Worth.

May 13, 1960.

Rehearing Denied June 10, 1960.

S. G. Johndroe, Jr., City Atty., Fort Worth, for appellant.

Rawlings, Sayers, Scurlock & Eidson, and Nelson Scurlock, Fort Worth, for appellee.

MASSEY, Chief Justice.

Certain construction work in connection with the grading and paving of streets and in connection with provision for drainage facilities in a new subdivision in the City of Fort Worth proved to be defective or inadequate. As a result during the course of normally heavy rains surface waters were caused to collect rapidly at the rear of plaintiff's property and to overflow the same. Her property had been acquired and located adjacent to the new subdivision before the time it was platted and dedicated and when it was unimproved pasture land. Before the work was performed, the drainage was sufficient to carry away all surface waters, present as the result of normal heavy rainfall.

Suit was instituted against the City of Fort Worth on the theory that the damages sustained were permanent and special

within the provisions of the Constitutional article providing that adequate compensation should be paid for damage to private property as applied to public use. Trial was to a jury and based upon its verdict judgment was entered in behalf of plaintiff. From this judgment the City appealed.

Judgment affirmed.

In the court's charge "proximate cause" was defined as "a cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event and without which that event would not have happened; and *to be a proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence, in the exercise of ordinary care, that the injury or some similar injury would occur. * * *"* (Emphasis supplied.)

By Special Issue No. 1 the jury was asked whether "after plaintiff purchased Lot 2, Block 10, South Hills Addition to the City of Fort Worth, and before the construction work had been done in connection with the last extension of the storm sewer in question, and the grading, filling and paving of the streets in that part of South Hills Addition referred to in the plat and dedication filed December 4, 1952, the natural drainage of surface waters resulting from heavy rains was in a depression or ravine to the rear of and east of the plaintiff's property?" Special Issue No. 2 asked whether "after the construction work referred to was completed, a substantial amount of surface waters resulting from heavy rains has been diverted onto plaintiff's property?" Special Issue No. 3, conditioned upon an affirmative answer to the preceding issue, inquired whether the construction work *"was a proximate cause* of a substantial amount of surface waters from heavy rains being diverted onto plaintiff's property, * * *?"* (Emphasis supplied.)

■ In a case plead and tried under the theory of permanent or special damages to physical property, in that the market value

thereof was diminished or destroyed, within the provisions of Art. 1, sec. 17, of the Constitution of Texas, Vernon's Ann.St., whether or not said loss or damage was "foreseeable" on the part of the public agency sought to be held responsible therefor is not a material question. The issue is whether the action, because of which liability is sought to be imposed, produced the effect complained of. Otherwise stated, the issue is whether the damage was the result of the action. It may be readily noted that by reason of the definition of "proximate cause" in this case, specifically the embodiment in the definition of the element of "foreseeability", the plaintiff necessarily carried a greater burden than was required by law upon Special Issue No. 3 on the matter of "causation".

■ Art. 1, sec. 17, of the Constitution of Texas, provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; * * *." By reason of said provisions, and in an instance where a municipality is in control of its streets, liability of the City exists in the event it interrupts the natural flow of surface water so as to divert it from its natural channel and cast it upon private property where it would not have been otherwise deposited as an incident resulting from grading, etc., upon the city streets. 39 Tex.Jur., p. 577, "Streets", sec. 47, "Diversion of Water".

Fort Worth is a Home Rule city. Under Vernon's Ann.Tex.Civ.St. Art. 1175, "Enumerated powers (of such cities)", sec. 16 particularly provides that such cities shall have the power to have exclusive dominion, control and jurisdiction in, over and under their public streets, and sec. 17 particularly provides that such cities shall have the power to open, extend, straighten and widen public streets, alleys, avenues and boulevards.

■ It is established that where, in the grading or otherwise improving of the

streets, etc., of such a city, done by an independent contractor, but non-negligently and in accordance with plans and specifications adopted and determined upon by the city, it is the city and not the contractor performing the work which would be liable for any special damages to property owners resulting therefrom. In such instances, the act of properly performing the work is not the personal act of the contractor, but that of the city. 39 Tex.Jur., p. 579, "Streets", sec. 48, "Liability of Independent Contractor"; Glade v. Dietert, 1956, 156 Tex. 382, 295 S.W.2d 642.

■ Furthermore, in Texas, when a city has the control, it is liable for any special damages suffered by property owners as the result of work done by others than independent contractors or employees, whether the improvement (as in grading a street) was legally authorized or merely permitted to be done. McQuillin, Municipal Corporations, 3rd Ed., sec. 37.232, "Liability as between municipality and other parties"; Denison & P. S. Ry. Co. v. James, 1899, 20 Tex.Civ.App., 358, 49 S.W. 660; Laager v. City of San Antonio, Tex.Civ.App.1900, 57 S.W. 61.

■ Under the proof of facts made upon trial of the case the City was, if not in the same relative status to those who did the work (which resulted in the casting of surface waters upon the property of the plaintiff) as it was to the independent contractor in the case of Glade v. Dietert, supra, in the position of having legally authorized the developer to perform such work. Indeed, the proof established that the authorities thereunto empowered by the City authorized the location and grade of the streets, and approved the plans and specifications of the construction intended to accomplish adequate drainage.

The case, therefore, was one in which the City could be determined to be liable in damages to the plaintiff under the provisions of the Constitutional article. That being the case, certain of the City's points of error are resolved against the contentions therein made.

■ The burden rests upon a property owner in such a case to obtain a jury finding that there had been permanent impairment of the market value of his property. Continental Oil Co. v. Berry, Tex.Civ.App., Fort Worth 1932, 52 S.W.2d 953, error refused. In view of the applicability of Texas Rules of Civil Procedure, rule 279, however, finding to that effect would be presumed to have been made in the instant case. This would be so because the judgment rendered was in favor of the plaintiff property owner, and the issue was raised by the pleadings and the evidence, and was necessarily part and parcel of an inquiry posed in issues which were submitted to the jury and answered in favor of the plaintiff.

■ The City has charged jury misconduct relative to the affirmative answer returned to the causation issue, Special Issue No. 3. After considerable time spent in resolving the question, we have reached the conclusion that the state of the record is such that it was within the discretion of the trial court, which heard evidence upon the City's motion for new trial, to conclude that the jury ultimately agreed to return an affirmative answer to said issue for legitimate reasons. Specifically, we believe that the trial judge could have concluded that those jurors who at an earlier stage of the discussion desired to return a negative answer to said issue did actually decide to agree to an affirmative answer instead of ending up without a verdict following the jury foreman's adamant position that he would "hang" the jury before he would agree to return a negative answer to the issue. There is no error involved in an answer so agreed to if it is in fact agreed to, and there is no contention that the verdict was returned without the concurrence of any juror. The City contends that the record made upon the hearing for new trial demonstrates that the jury answered said issue in the affirmative with

the intent to cause answers to accommodate a preconceived agreement on the part of the jury to "find" for the plaintiff. Although the record shows that a statement was made by one or more jurors during the course of deliberations that plaintiff would not recover unless the issue was answered "Yes", there is nothing at all in supplement, and the trial court was entitled to conclude. that the statement so made had no controlling effect upon the action of any member of the jury. Maryland Casualty Co. v. Hearks, 1945, 144 Tex. 317, 190 S.W.2d 62, 64, quoted in Ford v. Carpenter, 1949, 147 Tex. 447, 216 S.W.2d 558. Indeed, since the issue was the only issue in the charge upon the matter of causation, it would seem that jurors of ordinary intelligence would have known without being told that the plaintiff would very likely lose her case if the answer "No" should be returned. The fact that jurors know the legal effect of their answers does not warrant the inference that they arrived at a verdict in other than a lawful manner. Martinez v. Pena, Tex.Civ.App., El Paso 1940, 139 S.W.2d 337, writ dism., judgment correct. In one respect, the City relies upon the fact that after the affirmative answer was returned to the issue one juror, a Mr. Cunningham, stated that he had agreed to answer "Yes" against his better judgment. On the hearing, this juror testified that he had voted in the affirmative on the first ballot, which was before the occasion referred to by the City, and unexplained. The court was entitled to conclude that Mr. Cunningham never made the statement at all.

The City further charges misconduct in respect to the discussion of the jury and manner by which they arrived at answers relating to the amount of damages sustained by the plaintiff. In that respect, it should be noticed that the date on which it became apparent that the plaintiff's property was subject to being flooded was on or about July 18, 1953. Special Issue No. 4 inquired of the jury as to the market value of the plaintiff's property immediately prior to· such occasion, and Special Issue No. 5

inquired as to such value immediately subsequent thereto. In answer to No. 4 the jury found $13,500, and in answer to No. 5 the . jury found $10,500. This meant a "damaging" in the amount of $3,000. The evidence in the record demonstrated certain building improvements after said date and before the date of October 27, 1956, on or about which the City built a concrete wall along the rear of the property of the plaintiff and her neighbors· which served as· a diversion wall, minimizing the hazard to which the properties were subjected during the course of heavy rains. In other words, the wall rendered the properties less likely to be flooded than was the case prior to the time it was constructed. The construction of the wall was with the consent of the plaintiff. Special Issue No. 10 inquired of the jury as to the market value of plaintiff's property immediately prior to the date the wall was constructed, and was found to· have been $13,000. Special Issue No. 11 was as to the value immediately after the wall was constructed, and was found to have been $14,000. In other words, it was established that the market value of the plaintiff's property was enhanced by the presence of the diversion wall in the amount of $1,000.

The judgment which was rendered, aside from the mode of calculating interest (and there is no point of error related to interest), was for $2,000. In other words, the trial court concluded that the City was liable to the plaintiff on account of the action giving rise to the flooding of 1953 for damages of $3,000 but was entitled to a "credit" on such amount of $1,000 as enhancement in property value due to the construction of the diversion wall. Of this the plaintiff makes no complaint, so if there might be any questions involved upon the matter of the propriety of the "offset", they are such as may be disregarded.

The alleged misconduct of which the City complains in connection with the issues on damages seems to lie in the fact that the jury not only discussed the values "before and after" as applied to Special Is-

sues 4, 5, 10, and 11, but furthermore discussed and considered the differences in said values. In other words, the City believes that the jury erred when it discussed damages as such, and in gross and net amounts in money, rather than mere values, and furthermore, that the jury, in arriving at the answer to either No. 4 or No. 5, took a value determined as to one of said issues and mathematically added or substracted the figure agreed upon as damages from the flooding in 1953, and set down the mathematically computed figure as the answer to the other of said issues.

The state of the evidence upon the motion for new trial is such that the trial court was entitled, in the exercise of the discretion requisite in such cases, to find that the jury did not arrive at any answer to the aforementioned special issues through the process complained of by the City. The evidence would warrant but not compel a finding that the jury did arrive at their answers, or one of them, by such method.

Furthermore, in our opinion there is nothing wrong in such consideration on the part of the jury. It would be an unreasonable restriction to permit a jury to discuss the evidence upon values as of certain times and at the same time forbid their notice of the difference in said values. The plaintiff's attorney aptly states in his brief that there is no misconduct on the part of a jury in knowing that two and two make four. The reason why it is preferable, although not essential (see City of Brady v. Cox, Tex.Civ. App., Austin 1932, 48 S.W.2d 511), that special issues upon the question of property damages be submitted to juries by way of two issues—the first of which inquires as to the value before an event, and the second which inquires as to the value after, rather than to make inquiry as to what amount in damages was sustained by the property owner as the result of said event—is that by the one mode of submission the jury is more likely to be controlled by the evidence upon the matter of the "values" of the property before and after, and less likely to increase or diminish the amount it might otherwise

find as a single figure of "damages", according to its conception of the culpability on the part of the defendant or how great has been the oppression of the plaintiff. When such manner of submission is that adopted in an individual case, however, that circumstance does not inhibit the jury in its freedom to discuss "damages" as such, coupled with or in addition to the discussion upon "values". See Houston & T. C. R. Co. v. Ellis, 1920, 111 Tex. 15, 224 S.W. 471. Where the jury answers a special issue by adding or subtracting the amount decided upon as "damages" to another issue wherein a value is found, there would be no difference in the substantive effect so long as each answer was within the range of the evidence upon the matter. Courts will and should look to the substance. We fail to see any reversible error in the grounds asserted.

In the course of the preparation of the charge the City filed a great number of specially requested issues which were refused by the trial court, and by individual points of error complaint is made of such refusal. We have examined said issues and are of the opinion that the trial court did not err in refusing to submit any of them. A good many made inquiry as to whether Westcliff Company had performed certain construction or alterations in the premises to the rear of plaintiff's property and diverted the natural flow of the water so as to throw it onto the plaintiff's property, whether Westcliff was negligent, and whether its individual actions amounted to a proximate cause or the sole proximate cause of the plaintiff's damage. In our earlier discussion we reviewed the law applicable to recovery in this case, and such perhaps obviates any consideration of said specially requested issues. However, in addition it might be mentioned that there was no pleading and no evidence which could have entitled the City to any such issues, even if they could have been ultimate issues, which they were not. Under the state of the record, at the time the case was submitted to the jury the City had established no case whatever

against Westcliff Company. Neither has Westcliff been brought forward into this court as an appellee. Other specially requested issues properly refused by the trial court were likewise issues other than ultimate issues, or were incorporated in issues which were submitted to the jury.

By several points of error the City contends that it is entitled to judgment in the stead of the plaintiff, or, in the alternative, is entitled to another trial, in that certain testimony as to value of plaintiff's property was from a witness not qualified to give such testimony, and that in any event there was no competent evidence, or the evidence was insufficient, to establish liability on the part of the City or the damages sustained by the plaintiff. The evidence in the record, considered in connection with the principles controlling the right of recovery of a plaintiff under such a case (even though a certain qualification might be involved and an unnecessary burden carried by the plaintiff as the result of the injection of "foreseeability" into the question of causation), was both competent and sufficient, and all the evidence complained of was clearly admissible.

The City contends that it is established by the evidence that plaintiff led the City to believe that she would dismiss her suit for damages upon the City's construction of the diversion wall at the rear of her property, and that judgment for plaintiff was therefore erroneous since the City would not have constructed the wall but for its belief that the suit would be dismissed, and further, since plaintiff received the benefit of the diversion wall, the recovery of damages would amount to a double recovery and unjust enrichment. The City's contentions are not indisputably established in the evidence, and an issue thereupon was answered against it. Permitting damages to the plaintiff would not constitute a double recovery for or enrichment of plaintiff, for the City could be entitled to no more than a credit upon the damages to which plaintiff would otherwise have been entitled in the enhancement of the value of plaintiff's property as the result of the construction of the diversion wall. This the City did receive in the judgment, and plaintiff does not take issue with the allowance thereof to the City. The City cannot be heard to complain.

The City objected to the manner by which plaintiff's special issues were submitted for very numerous reasons, by each of which said issues have been tested and acquitted as to the attack made. The only material error is that previously referred to in connection with the issue upon causation. Any prejudice therefrom flowing would be against the plaintiff and to the benefit of the City, of which the City could not be heard to complain.

In resolving a final group of points of error we will note that we have previously indicated that the case was tried upon the theory that the plaintiff sustained special and permanent damage in the depreciation in the market value of her property. The jury findings mentioned established amounts by which judgment could properly be entered under such theory. The case was also tried on the theory that under the circumstances of the case the City was entitled to a "credit" on the aforesaid damages, if any, in an amount equal to the "enhancement" of the market value of the plaintiff's property as the result of the City's construction of the diversion wall. The jury findings on the defendant's issues established said amount and the trial court did award such a "credit" to the City in the judgment.

The City seemingly asserts that the jury answer which established a value greater than that found to have been the market value following the 1953 flooding ($10,500) immediately prior to the time the diversion wall was constructed ($13,000) contradicts the plaintiff's theory of special and permanent damage because there was a differential in the amounts, and the value had increased over that found to have been existent immediately subsequent to the 1953 flooding. There is no merit in the contention. Property values are not static. Fur-

thermore, even were there a necessity for any evidence in explanation of an increase in value, such is to be found in the fact that plaintiff added some rooms onto her house in the period between 1953 and 1956.

Finding no reversible error the judgment should be affirmed.

Affirmed.