The CITY OF HOUSTON, Texas, Petitioner,

v.

RENAULT, INC., et al., Respondents.

No. B–408.

Supreme Court of Texas.

July 17, 1968.

Rehearing Denied Oct. 2, 1968.

William A. Olson, City Atty., Homer T. Bouldin, Trial Supervisor, Carrol R. Graham and Herbert M. Beazley, Asst. City Attys., Houston, for petitioner.

Thompson, Coe, Cousins & Irons, R. B. Cousins, Dallas, Painter & Painter, James R. Roos, Houston, Greenhill & Speyer, Simon Greenhill, New York City, for respondents.

WALKER, Justice.

Renault, Inc., Renault Distributors, Inc., and Hughes-Peters, Inc., as successor to Sterling Motors, Inc., brought this suit against the City of Houston, Southern Pacific Railroad and Port Terminal Railroad to recover damage caused to 1,620 Renault and Peugeot automobiles and trucks by the impounding of surface waters on the land where the vehicles were stored. The trial court rendered judgment on the jury verdict that the plaintiffs take nothing. Plaintiffs appealed only as to the judgment in favor of the city. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment against the city for $862,500.00. 415 S.W.2d 948.

In December, 1959, Sterling Motors, Inc., leased a tract containing some 27 acres owned by André Crispin and located in the 9000 block of Clinton Drive in Houston.

The property was leased as a site for storing the automobiles. Originally the natural flow of surface water from the tract was primarily to the east, but it appears from the evidence that water would have broken over to the south and west after building up to a depth of about one foot on the south part of the land. Immediately south of the 27-acre tract is Clinton Drive, which is a divided roadway constructed by Harris County. The south lane was built in about 1927 and the north lane in 1947. Since the surface of the road was several feet above the level of the leased premises, the roadway would, if adequate drainage were not provided, serve to impound water that might otherwise flow from the tract toward the south and west. A box culvert six feet wide and four feet high was placed under the road. The embankments and tracks of the Southern Pacific Railroad and the Port Terminal Railroad are immediately south of and parallel to Clinton Drive. Each of the railroads had placed two 48-inch round culverts under their embankments and approximately in line with the culvert under Clinton Drive.

Clinton Park Subdivision, which is located east of the Crispin property, was developed in 1941. At that time the elevation of the land included in the subdivision was raised from three to six feet, thus blocking the drainage in that direction. As a result of the changes in elevation, moreover, water from the western portion of the subdivision flowed to the west rather than to the east. After the subdivision was put in, the total area draining toward the culvert under Clinton Drive was approximately 422 acres. This drainage area included the leased premises, other land to the north and west, and part of Clinton Park Subdivision to the east. The entire area was annexed by the city in 1949.

Storage of the cars on the leased premises began early in 1960. During the period of three days from June 24 to June 26, 1960, a total of 14.25 inches of rain fell in the area. The total rainfall during the 36-hour

period ending at noon on Saturday, June 25, was 5.91 inches. There is no contention here that this was an unprecedented rainfall. The culvert under Clinton Drive was not sufficient to carry off the water as it drained to that point, and by noon on Saturday the entire storage area was covered to a depth of more than two feet.

Plaintiffs brought and tried their suit on three theories: (a) that their automobiles had been damaged for public use within the meaning of Article 1, Section 17, of the Texas Constitution, Vernon's Ann.St., (b) absolute liability for impounding surface water in violation of Article 7589a;[1] and (c) negligence. In response to the special issues that are material here, the jury: (1, 2, 7, 8) found that the city maintained the culvert under Clinton Drive at an elevation and of such size as to prevent adequate drainage of the area, but refused to find that the same was negligence; (13) refused to find that there was debris, silt and vegetation in the culvert; (19–20) found that Clinton Drive as maintained by the city impounded the natural flow of surface waters on the premises in question, and that such impounding was a proximate cause of the plaintiffs' damages; (23–24) found that the damages were proximately caused by the negligent failure of the plaintiffs to ascertain the drainage characteristics of the property; (25, 27) refused to find that the plaintiffs were negligent in placing the automobiles on the premises or that they failed to provide adequate watchman protection; (30) refused to find that the manner of storage of the automobiles interfered with the natural flow of the surface waters on the occasion in question; (33) refused to find that an act of God was the sole proximate cause of the damage; and (34–35) found that the builders of Clinton Park Subdivision diverted or impounded the natural flow of surface waters across plaintiffs' property, but refused to find that such diversion or impounding was the sole proximate cause of the damage.

The jury has absolved the city of negligence, and there is no contention that negligence was established as a matter of law. Article 7589a makes it unlawful for "any person, firm or private corporation" to divert the natural flow of surface waters or impound the same in such manner as to damage the property of another. We agree with the Court of Civil Appeals that this statute does not apply to municipal corporations. See State v. Central Power & Light Co., 139 Tex. 51, 161 S.W.2d 766. If the city is liable then, it must be on the theory that plaintiffs' automobiles were damaged for public use within the meaning of Article 1, Section 17, of our Constitution.

It has been pointed out on several occasions that this section of the Constitution does not give a cause of action against those constructing public works for acts which, if done by an individual in pursuit of a private enterprise, would not be actionable at common law. See Trinity & S. Ry. Co. v. Meadows, 73 Tex. 32, 11 S.W. 145, 3 L.R.A. 565; Southwestern Public Service Co. v. Moore, 119 Tex. 391, 29 S.W.2d 329; Gainesville, H. & W. R. Co. v. Hall, 78 Tex. 169, 14 S.W. 259, 9 L.R.A. 298. This test has been criticized and may not be infallible. See 2 Nichols on Eminent Domain, 3rd ed. 1963, § 6.441. We fail to see any material difference, however, between damage to transitory personal property caused by the impounding of surface water and damage to buildings caused by loss of lateral support. It is settled that as to the latter the Constitution does not go beyond the common law rule to impose liability without fault. City of Amarillo v. Gray, Tex.Civ.App., 304 S.W.2d 742 (holding approved 158 Tex. 275, 310 S.W.2d 737). In our opinion the same principle applies here, and the city is not responsible for the damage to plaintiffs' automobiles unless the same would be actionable at common law if

---

1. All statutes are referred to by the article number under which they appear in Vernon's Ann. Tex.Civ.Stat.

inflicted by a private individual. Otherwise "the municipality would be held to a higher liability than a private person engaging in the same acts." City of Abilene v. Downs, Tex.Sup., 367 S.W.2d 153.

There has been much discussion and even more confusion concerning the rights and duties of adjoining landowners with respect to surface water. Under the civil law rule, which prevails in England and a number of states, the owner of the lower land may make any reasonable use of his property for the production of crops but is under the general duty to receive surface water flowing thereon when untouched and undirected by the hand of man. Opposed to this is the so-called common enemy doctrine, which recognizes the right of a landowner to turn surface water from his own property without liability for damage that may be caused by such obstruction or diversion. See 56 Am.Jur. Waters § 67 et seq. The common enemy doctrine was adopted in Texas and a number of other jurisdictions in the mistaken belief that it was the rule of the English common law. Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451; Barnett v. Matagorda Rice & Irrigation Co., 98 Tex. 355, 83 S.W. 801; Gross v. City of Lampasas, 74 Tex. 195, 11 S.W. 1086.

As pointed out in *Miller,* our Courts of Civil Appeals applied the common enemy doctrine until the predecessor of Article 7589a was adopted in 1915. This statute was omitted from the codification of 1925, but was reenacted in 1927. Since that time most controversies over damage caused by surface water have been governed by that or some similar statute, and we have not reexamined our common law rule in the light of developments in other jurisdictions. By modifying and qualifying the traditional rules, the courts in a substantial number of states have "tended toward a more flexible middle position" which gives them "considerable leeway in adjusting the rights of the parties in the light of particular circumstances." They hold generally that surface water may be fended off if done reasonably, for a proper purpose and with due regard for the adjoining property, but that there is no right to obstruct its flow arbitrarily, negligently, wantonly or unreasonably. Some courts which ordinarily follow the civil law rule have recognized that the owner of urban property may protect the same against the surface water of an adjoining lot without subjecting himself to liability. See Annotation, 59 A.L.R.2d 421; 56 Am.Jur. Waters §§ 70, 78.

■ According to the American Law Institute, the liability of one who causes an unintentional but substantial invasion of the land of another by interfering with the flow of surface water depends upon whether his conduct was negligent, reckless or ultrahazardous. Where the invasion is intentional, liability depends upon whether the invasion was unreasonable. An invasion is intentional within the meaning of these rules when the defendant acts for purpose of causing it or knows that it is resulting or is substantially certain to result from his conduct. See Restatement, Torts, § 833 and comments thereunder. In our opinion this is the sound and better rule in the absence of a statute governing the rights and obligations of the parties, at least with respect to urban property where conditions are constantly changing and it is generally difficult or even impossible to establish how surface water flowed "when untouched and undirected by the hand of man." In the present case, for example, it is largely a matter of speculation as to what extent, if any, plaintiffs' automobiles would have been damaged if the natural drainage to the east had not been obstructed by Clinton Park Subdivision.

The invasion here was unintentional. A culvert had been placed under the road to accommodate water draining from the north. The bottom of this culvert was at about the same elevation as the low ridge which existed at that point before the road was constructed. It does not appear that the culvert was altered in any way by the city, which maintained the road only by re-

pairing and improving the same for travel by the public.

In 1958 and 1959 water frequently ponded on the southern portion of the Crispin property after a large amount of rain fell in a short period of time, but there is no evidence that the city knew this was caused by the condition in which the road was maintained. The owner, Mr. Crispin, testified that he had heard of the property flooding only the one time. In 1959 his representative requested the city to construct an additional culvert under Clinton Drive. The request was referred to the Director of Public Works, who reported to the Mayor that an investigation had disclosed that two metal culverts recently installed under the Port Terminal Railroad embankment were too high; that the railroad had agreed to lower the same to correct grade; that such new pipes and the other structures on the north road ditch of Clinton Drive were adequate to discharge the runoff from the drainage area; and that the Crispin property was extremely low and had always been subject to flooding. These communications are relevant on the issue of negligence, but plaintiffs have not shown knowledge on the part of the city that flooding of the leased premises was resulting or was substantially certain to result from the maintenance of the road with the existing culvert.

The jury found that Clinton Drive as maintained by the city impounded the natural flow of surface waters on the premises in question, and that *such impounding* was a proximate cause of plaintiffs' damages. It refused to find that the city was negligent in maintaining the culvert at an elevation and of such size as to prevent adequate drainage of the area or that there was debris, silt and vegetation in the culvert. No other issue dealing with negligence on the part of the city was submitted, and there was no request for such an issue or objection to the failure to submit same. Negligence is not established as a matter of law. In these circumstances and since the trial court rendered judgment that the plaintiffs take nothing, we must deem in

support of that judgment a finding that the city was not negligent in maintaining the road as it did. Rule 279, Texas Rules of Civil Procedure. On the present record then and in the absence of statute, a private individual guilty of the acts and omissions of the city in this case would not be liable at common law. Plaintiffs have failed, therefore, to establish their right to recover on the theory that the automobiles were damaged for public use within the meaning of the Constitution.

We recognize that the views here expressed are not consistent with the opinions in City of Waco v. Roberts, 121 Tex. 217, 48 S.W.2d 577, and City of Ft. Worth v. Miller, Tex.Civ.App., 336 S.W.2d 296 (wr.ref. n.r.e.). They are disapproved, but only to the extent that they conflict with our holding in the present case. It should be observed that in each of those cases the trial court rendered judgment against the city, and if the record otherwise warranted, there would have been a deemed finding of negligence in support of that judgment. We also note that in City of Ft. Worth v. Miller, the jury found that the *construction work done by the city* was a proximate cause of the diversion of the water. The charge included an instruction that "to be a proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence, in the exercise of ordinary care, that the injury or some similar injury would occur." In City of Waco v. Roberts, moreover, the invasion may well have been intentional as that term is defined above.

Plaintiffs rely upon a number of other cases, which are to be distinguished on the following grounds: (1) State v. Hale, 136 Tex. 29, 146 S.W.2d 731; Ft. Worth Improvement Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.,N.S., 994; State v. Loessin, Tex.Civ.App., 343 S.W.2d 494 (wr.ref.n.r.e.); State v. Sparks, Tex.Civ.App., 296 S.W.2d 609 (no writ); City of Houston v. Wall, Tex.Civ.App., 207 S.W.2d 664 (wr.ref.n.r.e.); Tarrant County W. Control & I. Dist. No. 1 v. Fowler,

Tex.Civ.App., 175 S.W.2d 694 (wr.ref.w.m., 142 Tex. 375, 179 S.W.2d 250); State v. Malone, Tex.Civ.App., 168 S.W.2d 292 (wr. ref.w.m.); City of Austin v. Howard, Tex. Civ.App., 158 S.W.2d 556 (wr.ref.w.m.); and City of Brady v. Cox, Tex.Civ.App., 48 S.W.2d 511 (no writ), apparently were actions for the recovery of damage caused by the diversion or impounding of flood rather than surface waters; (2) in City of Wichita Falls v. Mauldin, Com.App., 39 S.W.2d 859, the damage was found to have been proximately caused by the negligence of the city; and (3) Harris County v. Gerhart, 115 Tex. 449, 283 S.W. 139; Clark v. Dyer, 81 Tex. 339, 16 S.W. 1061; Angelina County v. Bond, Tex.Civ.App., 16 S.W.2d 338 (no writ); and Palo Pinto County v. Gaines, Tex.Civ.App., 168 S.W. 391 (wr. ref.), are based, in part, upon either Article 6328 or Article 6730, which have been construed as imposing upon counties and railroads the duty to provide adequate drainage under roads and tracks. There is no similar statute applicable to municipalities, and it is our opinion that the trial court did not err in rendering judgment on the verdict in favor of the city.

The judgment of the Court of Civil Appeals is accordingly reversed and that of the trial court is affirmed.

NORVELL, Justice (concurring).

I concur in the opinion of Mr. Justice Walker, but in my opinion there are other grounds which support the judgment of reversal. I shall mention one.

This is an unusual case on the facts. The construction of the highway which respondents say was the action which ultimately resulted in damage took place some time prior to the City's 1949 annexation of the territory involved. In 1960, some eleven years after such annexation, respondents placed movable personal property in the area. Special Issues Nos. 23 and 24, and the jury's answers thereto, were as follows:

"23. Do you find from a preponderance of the evidence that the failure of the plaintiffs (respondents) to ascertain the drainage characteristics of the property in question was negligence?

"Answer 'We do.'

"24. Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the damages, if any, sustained by the plaintiffs?

"Answer 'We do.'"

The respondents' neglect contributed to the loss sustained by them. An individual defendant, not having the power of eminent domain, would not be liable. I do not think Article 1, § 17, of the Texas Constitution affects the situation. When personal property is negligently placed upon land subject to flooding, the owner of such property should not be allowed to recover against a defendant because of the circumstance that the defendant is vested with the power of eminent domain.